**Carlos M. GUTIERREZ,
Plaintiff–Appellant,**

v.

**Howard A. PETERS, III, Director, Illinois Department of Corrections, George E. Detella, Warden, Danville Correctional Center, Early Laster, Assistant Warden, Danville Correctional Center, et al., Defendants–Appellees.**

No. 93–2366.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1997.

Decided April 23, 1997.

Roger Pascal, Neil Lloyd (argued), Schiff, Hardin & Waite, Chicago, IL, for Plaintiff–Appellant.

Claudia E. Sainsot, A. Benjamin Goldgar (argued), Office of the Attorney General, Chicago, IL, Thomas S. Gray, Office of the Attorney General, Springfield, IL, for Defendants–Appellees.

Before CUMMINGS, BAUER, and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

Carlos Gutierrez brought this suit under 42 U.S.C. § 1983, complaining that the allegedly inadequate medical care he received for an infected cyst while imprisoned at the Danville Correctional Center rose to the level of cruel and unusual punishment under the Eighth Amendment. The district court granted defendants' motion for judgment on the pleadings and denied a like motion submitted by Gutierrez.[1] For the reasons that

---

1. It is not at all clear that the document entitled "Motion for Judgment on the Pleadings" filed by Gutierrez was intended to be a motion per se. Instead, it appears to be a document Gutierrez filed in response to the defendants' motion for purposes of defeating that motion. Indeed, the defendants moved to strike the "motion" for precisely this reason. However, the district court described the posture of the case as presenting "the parties' cross motions for judgment on the pleadings" and therefore we too shall refer to Gutierrez' filing as a motion. Ultimately, it is

follow, the judgment of the district court is affirmed.

## I. BACKGROUND

The district court dismissed Gutierrez' claims on the pleadings; therefore, this Court must accept the following well-pleaded allegations from Gutierrez' complaint as true. *Rooding v. Peters*, 92 F.3d 578, 580 (7th Cir.1996); *Dell v. Board of Educ.*, 32 F.3d 1053, 1064 (7th Cir.1994). On June 25, 1991, while incarcerated at the Danville Correctional Center, Gutierrez met with Dr. Tanner, a prison doctor. Gutierrez asked Tanner to look at the cyst on his back because he felt as if it was infected and was experiencing "a lot of pain from it." After examining the cyst, Tanner told Gutierrez that there was nothing wrong and instructed him to return to his housing unit and take hot baths. Tanner denied Gutierrez' request for permission to come to the hospital unit for sitz baths.

One week later, on July 2, Gutierrez requested to see Dr. Tanner again because he could not tolerate the pain associated with the cyst. He was seen two days later by Nurse Steven Combs, who examined Gutierrez' back, concluded that the cyst was infected, and placed Gutierrez on "sick call" for the next day. Nurse Combs also gave Gutierrez some gauze pads apparently for attending to drainage from the cyst. For reasons not disclosed by the record, Gutierrez was not summoned for sick call on July 5 as scheduled. On July 6, he had his mother call the prison on his behalf. Gutierrez' mother spoke with a prison counselor, Joan Walls, who said that nothing could be done that day because no doctors worked at the prison on the weekend. Gutierrez' request to visit the prison health care unit on Saturday, July 6, was denied; however, he did go for night medication (apparently for an unrelated ailment) at 8:00 that evening at which time Nurse Combs asked him if everything was taken care of. When Gutierrez replied "No," Nurse Combs informed him that he was scheduled for "med-line" call the next day.

At 8:00 a.m. on July 7, Gutierrez went to the health care unit for med-line call and was seen by Nurse Joy Hancock. Upon seeing Gutierrez' cyst, Hancock exclaimed "Oh my god," and told him that he would see Dr. Tanner the next day. Hancock also assured him that she would make sure that he was seen. During the middle of that night, Gutierrez' cyst burst, causing him "excruciating pain." Despite being "in a hell of a lot of pain," at 10:00 in the morning the next day (July 8), Gutierrez went to his job in the prison law library. Later that morning he was summoned to the health care unit and seen by Dr. Tanner.

Gutierrez' complaint alleges that his cyst became infected on two subsequent occasions while he was incarcerated. Although not alleged in any detail, the complaint indicates that he experienced similar delays in treatment—approximately 15 days—on both occasions:

> I was not going to sue the institution, but again this has happened to me 2 more times. For I put in requests to see the Doctor's [sic] for 15 days in a row, the next time I put in requests 13–16 times without being called to the hospital. So again, my back (Cyst) get's [sic] Infected and burst open without me going to the hospital.... Now I put in request[s] since Nov. 4, 1991, without avail. I was finally called on November 19, 1991.

Compl. at 4–5.

Defendants answered the complaint, admitting that Gutierrez had a pilonidal cyst, denying that they prevented (or conspired to prevent) him from obtaining medical treatment for the cyst, and denying that a pilonidal cyst constitutes a "serious" medical condition. Defendants also filed a motion pursuant to Rule 12(c) for judgment on the pleadings. In brief, defendants maintained that Gutierrez' complaint failed to allege sufficient (or, in some cases, any) personal involvement on the part of several defendants, that the complaint failed to allege deliberate indifference to his medical needs on the part of several other defendants, and that as to defendant Tanner, Gutierrez was simply disagreeing with the doctor's medical decisions

---

immaterial how Gutierrez' document is construed—for he is plainly not entitled to judgment

on the pleadings in his favor and does not suggest otherwise in this appeal.

and treatment. Defendants also maintained that Gutierrez' pilonidal cyst is not a serious medical condition that can support an Eighth Amendment claim.

When Gutierrez failed to respond to defendants' motion within 14 days as prescribed by Central District of Illinois Local Rule 2.9(B), the district judge issued a Rule to Show Cause, granting Gutierrez 14 days to show good cause why judgment should not be entered in defendants' favor. Gutierrez responded with a group filing which included an answer to the Rule to Show Cause, a supplemental brief and argument, and a motion for leave to file an amended complaint. The proposed amendment sought to add additional defendants, as well as additional factual allegations in the form of a narrative chronology of events accompanied by copies of progress notes from Gutierrez' prison medical records which were attached as exhibits. Although much of the factual information provided by Gutierrez in response to the Rule to Show Cause was redundant with the allegations of his original complaint, the materials did reveal the following additional facts which we recount in some detail because of their relevance to the proper disposition of this case.[2]

In May 1990, Gutierrez was transferred to the Danville Correctional Center from another Illinois Department of Corrections facility. At that time, he informed Dr. Tanner that he suffered from a pilonidal cyst near his coccyx. Tanner told Gutierrez that all he could do for the cyst was prescribe antibiotics. In response to Gutierrez' request for permission to take sitz baths (which had been prescribed for him in the past), Tanner said he would look into it, but nothing came of it.

When Tanner saw Gutierrez on July 8, 1991, after his cyst burst for the first time, Tanner prescribed a fourteen-day course of antibiotics (Tetracycline) and daily sitz baths. Ten days later, in response to Gutierrez' request for additional sitz bath treatment, Tanner renewed his sitz bath card for one week. Four days later on July 22, Gutierrez returned to the health care unit; his cyst was observed to be improved—although still draining. A nurse ordered additional Tetracycline and another week of sitz baths. On July 31, Gutierrez was seen again in the health care unit in response to his complaint that his cyst was infected. A ten-day course of Keflex (an antibiotic) and sitz baths was ordered. Six days later on August 6, Gutierrez complained that he was having problems sitting, standing and walking, and requested pain medication. A two-week course of Motrin was prescribed. Approximately two weeks later on August 19, Tanner again examined Gutierrez. Although the cyst was draining, Tanner noted that it did not appear to be infected at that time. Nevertheless, he ordered daily sitz baths for one week.

On September 4, after submitting nine requests for medical attention, Gutierrez was seen again for his cyst. Dr. Ehrhardt prescribed sitz baths. Things were relatively calm for the next two months until November 4, at which time Gutierrez began submitting requests to see a doctor—he claims to have submitted 16 such requests. On November 18, he was seen by Dr. Tanner. Gutierrez complained that the cyst had burst again, and his medical records reveal that he had a temperature of over 100 degrees. Tanner noted some drainage and prescribed antibiotics and sitz baths.

---

**2.** As our decisions make clear, facts alleged in a brief in opposition to a motion to dismiss (indeed, even facts alleged for the first time on appeal) as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint. See, *e.g., Dausch v. Rykse,* 52 F.3d 1425, 1428 n. 3 (7th Cir.1994); *American Inter–Fidelity Exch. v. American Re–Insurance Co.,* 17 F.3d 1018, 1021–1022 (7th Cir.1994); *Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–964 (7th Cir.1992); *Swofford v. Mandrell,* 969 F.2d 547, 549 (7th Cir.1992); *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992). "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard,* 58 F.3d 295, 297 (7th Cir.1995). Here there is no need to resort to hypotheticals, all of the facts that follow in the text are drawn from Gutierrez' *pro se* filings in the district court—including his proposed amended complaint and the medical records attached thereto—and ought to have been considered by that court in evaluating the sufficiency of Gutierrez' complaint.

Gutierrez again sought medical attention for his cyst in mid-December. At that time Dr. Ehrhardt examined him and prescribed two different antibiotics and daily sitz baths. In mid-January, Gutierrez asked to have his sitz bath card renewed. Dr. Tanner obliged by renewing Gutierrez' sitz bath order. On March 11, 1992, Gutierrez again complained about his cyst. Sitz baths, antibiotics, and Motrin were ordered. The final episode recounted by Gutierrez took place in early April 1992 when his cyst became infected once again. Dr. Ehrhardt ordered sitz baths three times per week for one month.

The district court denied Gutierrez' motion to amend his complaint, finding that "[t]he amended complaint merely restates the facts alleged in the complaint already on file" and that Gutierrez' desire to name additional defendants was without any basis.[3] The district court granted Gutierrez an additional 14 days to respond to defendants' motion for judgment on the pleadings. After Gutierrez responded, the district court granted defendants' motion for judgment on the pleadings. Principally, the district court found that Gutierrez' pilonidal cyst did not constitute a sufficiently serious medical condition to support an Eighth Amendment claim. See Order at 4–6.[4]

Gutierrez appeals the district court's orders denying him leave to amend his complaint and granting judgment on the pleadings in favor of defendants. For reasons other than those relied on by the district court, we affirm the district court's judgment.

## II. ANALYSIS

*Standards*

Our review of the district court's grant of judgment on the pleadings is *de novo.* *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997); *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). In the instant case, defendants' Rule 12(c) motion for judgment on the pleadings challenged the sufficiency of plaintiff's complaint. Accordingly, the standards governing their Rule 12(c) motion are the same as those governing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted: "the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir.1989); see also *Flenner*, 107 F.3d at 461; *GATX*, 64 F.3d at 1114. In

---

**3.** In this regard, Judge Baker correctly observed that the Illinois Department of Corrections was immune from suits for damages. See *Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 788 (7th Cir.1995) ("The Department of Corrections is immune from suit by virtue of the Eleventh Amendment."); see also *Brunken v. Lance*, 807 F.2d 1325, 1329 (7th Cir.1986). Judge Baker rejected Gutierrez' attempt to add Warden Neal as a defendant because there is absolutely no mention of him in any of the documents submitted by Gutierrez and there is no *respondeat superior* liability under 42 U.S.C. § 1983. As to Dr. Ehrhardt, Judge Baker regarded Gutierrez' complaint against Ehrhardt as simply a disagreement over a prescribed treatment—which does not state a claim under § 1983. (As did the State in its opposition to Gutierrez' motion to amend, Judge Baker mistakenly referred to Dr. Ehrhardt as "Dr. Dixon" in his order denying leave to amend. However, it is readily apparent that the reference is to Dr. Ehrhardt.) Finally, with respect to Nurse Dixon, Judge Baker noted that her alleged mistake in charting that Gutierrez failed to show for a sitz bath appointment did not state a constitutional claim.

**4.** Additionally, the district court found that Gutierrez failed to state a claim against defendants Peters, DeTella, Shansky, Neal, Laster, and Redman, who were not even mentioned in the complaint. And, with respect to Gutierrez' claims against Joy Hancock, Steven Combs, and Sharon Redman, all of whom are licensed practical nurses, the district court found that Gutierrez had pleaded himself out of court by virtue of his express statements that the L.P.N.s perform "to the best of their knowledge and ability" and that he did not "put any blame on the L.P.N.'s." Gutierrez' claim against defendant Walls was found to be insufficient because Walls simply informed Gutierrez' mother that no doctor was on duty at the prison over the weekend. Finally, the district court found that Gutierrez failed to state a claim against defendant O'Neill, the prison's health care administrator, because "[t]he only allegation against [her] ... is that she asked a subordinate to treat the defendant." Order at 7. The court also dismissed Gutierrez' conspiracy claim, finding that he "failed to articulate any factual basis to support his contention that there was a conspiracy among defendants to deprive him of needed medical care." *Id.* n. 1. Gutierrez does not contest this finding; accordingly, we do not address it.

reviewing the plaintiff's complaint, all well-pleaded facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff. *Flenner,* 107 F.3d at 461; *Rooding v. Peters,* 92 F.3d 578, 579 (7th Cir.1996); *Dell v. Board of Educ.,* 32 F.3d 1053, 1064 (7th Cir.1994). Furthermore, as is well established in this Circuit, because Gutierrez proceeded *pro se* in the district court, his complaint must be liberally construed and is entitled to less stringent scrutiny than those prepared by counsel. See, *e.g., Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir.1996) ("It is, by now, axiomatic that district courts have a special responsibility to construe *pro se* complaints liberally"); *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996) (" '[A]llegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers,' " quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652); *Matzker v. Herr,* 748 F.2d 1142, 1146 (7th Cir.1984) ("A complaint drafted by a pro se litigant 'however inartfully pleaded,' is held 'to less stringent standards than formal pleadings drafted by lawyers,' " quoting *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163).

*Gutierrez' Eighth Amendment Claim*

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251. The standard articulated in *Estelle*—"deliberate indifference to serious medical needs"—contains both an objective element and a subjective element. See *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996), petition for certiorari filed (March 18, 1997), 65 USLW 3666. The former requires that the deprivation suffered by the prisoner be "objectively, 'sufficiently serious,' " *id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811); *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) (same), certiorari denied, —— U.S. ——, 117 S.Ct. 980, 136 L.Ed.2d 863. As the Court explained in *Farmer,* to be sufficiently serious "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." 511 U.S. at 834, 114 S.Ct. at 1977. In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious. See *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.1996) ("for liability to exist the medical need must be objectively serious"); *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996) (ignoring a request for medical treatment is a form of cruel and unusual punishment "provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized"). The subjective element requires that the officials act with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977; *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271. "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.' " *Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156. In *Farmer,* the Court illuminated the nature of deliberate indifference as follows:

> We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837, 114 S.Ct. at 1979. With these standards and principles in mind, we turn to consider whether Gutierrez' allegations are sufficient to state an Eighth Amendment claim.

As noted above, the district judge's principal ground for dismissing Gutierrez' suit was his finding that "a pilonidal [hairy] cyst on the skin surface of the plaintiff's lower back did not constitute a 'serious' medical need in the Eighth Amendment context." Order at 5. To determine whether Gutierrez' medical condition was sufficiently serious, the district judge relied on the following framework:

In considering whether a medical need is "serious," the court considers such factors as the severity of the medical problem, the potential for harm if medical care is denied or delayed, and whether any such harm actually resulted from the lack of medical attention.

Order at 5. Applying this framework, Judge Baker reasoned:

Apart from the plaintiff's say-so, the pleadings do not suggest that the growth on the plaintiff's back was an ailment of the gravity contemplated by *Estelle*. There is no indication that the condition threatened the plaintiff's life or health; rather, it would appear that maturation, bursting and draining were part of the life cycle of the chronic cyst. Dr. Tanner himself thought the cyst was insignificant, believing that hot baths were the only treatment warranted.... Furthermore, the only purported "harm" suffered by the lack of prompt medical attention was that the cyst burst, which may have caused the plaintiff pain, but appears to have been the natural and expected course of the infection, regardless of treatment.

*Id.* We disagree. As explained below, the framework employed by the court below was somewhat inapt. Moreover, in resolving the issue against Gutierrez, the district court improperly indulged a number of unwarranted inferences concerning the nature of Gutierrez' condition.

The framework employed by Judge Baker was drawn from a pre-*Estelle* decision of this Court in which we stated:

[A] claim of medical mistreatment rises to fourteenth amendment proportions when it asserts a refusal to provide essential medical care after a prisoner brings his medical complaint to the attention of prison authorities.... In the ultimate determination whether medical care was in fact essential, the question would be, we think, whether it had been proved that a physician exercising ordinary skill and care at the time of the request for medical care would have concluded that the symptoms of the prisoner evidenced a serious disease or injury; that the potential for harm by reason of delay or denial of medical care was sub-

stantial; and that such harm did result. In deciding at the pleading stage whether a claim has been stated, the court must consider whether the factual allegations of the complaint suggest the presence of these factors.

*Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir. 1974), certiorari denied, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119, vacated on other grounds, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39. We are skeptical that this pre-*Estelle* framework is of any continued utility and note in this regard that this Court has almost never used it since *Estelle* was decided. Nor have our sister circuits relied on such a framework for determining the "seriousness" of a medical need in the wake of *Estelle.*

The *Thomas* framework was designed to give meaning to the expression "essential medical care," which in pre-*Estelle* days was used by several circuits in defining prison officials' obligations under the Eighth and Fourteenth Amendments. See, *e.g., Thomas,* supra; *Williams v. Vincent,* 508 F.2d 541, 543–544 (2d Cir.1974) ("A complaint under section 1983 based on inadequate medical treatment states a cause of action if it alleges conduct which 'shocks the conscience,' such as deliberate indifference by prison authorities to a prisoner's request for essential medical treatment."); *Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir.1972) ("a charge of deliberate indifference by prison authorities to a prisoner's request for essential medical treatment is sufficient to state a claim"); *Jones v. Lockhart,* 484 F.2d 1192, 1193 (8th Cir.1973) (approving the Second Circuit's standard as articulated in *Corby*). *Estelle,* of course, speaks in different terms—namely, deliberate indifference to *serious,* not *essential,* medical needs.

Although the "serious medical need" formulation is far from self-defining, it is clear that the Supreme Court contemplated that medical conditions far less critical than "life-threatening" would be encompassed by the term. Indeed, the inmate in *Estelle* based his medical care claim "solely on the lack of diagnosis and inadequate treatment of his back injury," which had been diagnosed by prison doctors as a lower back strain and

treated with muscle relaxants and pain medication. 429 U.S. at 107, 97 S.Ct. at 292–93. In dismissing the Eighth Amendment claim against one defendant (because that claim, at most, alleged medical malpractice) and remanding the claims against the other defendants for further consideration, the Court never questioned that the inmate's allegations of severe pain from his back injury were sufficiently serious to support his Eighth Amendment claim. Furthermore, in discussing the underlying principles governing the government's obligation to provide medical care to inmates, the Court made clear that the obligation extends not only to those cases in which the denial of care "may actually produce physical torture or a lingering death" but also those in which "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103, 97 S.Ct. at 290.

The important point for present purposes is that *Estelle* identified a class of cases in which the medical condition involved, while far from life-threatening, is nevertheless sufficiently serious that the deliberately indifferent denial of medical care for such a condition—resulting in needless pain and suffering—is "repugnant to the conscience of mankind" and offensive to "evolving standards of decency," *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292, and thus fully capable of supporting an Eighth Amendment claim. Accordingly, as a general matter, pre–1976 "essential medical care" standards, such as the one relied on below, may well be under-inclusive in identifying those medical needs that are sufficiently "serious" to support an Eighth Amendment claim in the wake of *Estelle.*[5]

This Court's post-*Estelle* decisions, as well as those of the other circuit courts, have repeatedly recognized that delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims. Most recently, in *Cooper v. Casey,* 97 F.3d 914 (7th Cir.1996), a panel of this Court affirmed a jury verdict in favor of two inmates who were assaulted by prison guards and suffered "cuts, severe muscular pain, and (as a consequence of [being maced] ) a burning sensation in their eyes and skin." 97 F.3d at 916. As the basis of their Eighth Amendment claim, the plaintiffs charged that despite their repeated pleas they did not receive medical assistance until the second day after the beating when they were finally x-rayed. (Although the x-rays were negative, the doctor prescribed a mild dosage of a drug for the relief of muscular pain.) In affirming the judgment despite a challenge that the plaintiffs' injuries were not sufficiently serious, Chief Judge Posner held that the issue of whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating was properly an issue for the jury. 97 F.3d at 97. Similarly, in *Antonelli v. Sheahan,* 81 F.3d 1422 (7th Cir.1996), a panel of this Court held that an inmate of the Cook County Jail stated an Eighth Amendment denial-of-medical-care claim "in that his 'pleas' for psychological treatment were 'ignored.' " *Id.* at 1432. Cf. *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (pre-trial detainee asserting Fourteenth Amendment claim based on inadequate medical care stated claim based on allegations that he suffered severe head injury from slip and fall which caused pain and discomfort that per-

---

**5.** In any event, the inadequacy of the *Thomas v. Pate* framework for answering the "seriousness" question should be apparent if for no other reason than it is senseless to attempt to answer the question "is condition X 'serious' " by speculating as to whether a physician would consider condition X as evidencing "a 'serious' disease or injury," for the latter inquiry simply begs the initial question. But even under this framework, Gutierrez' complaint passes muster. We have no hesitation in concluding that a physician exercising ordinary skill, if presented with a patient complaining of excruciating pain, a purulent draining infection, and fever in excess of 100 degrees, would regard the condition as serious.

Additionally, there is certainly some likelihood that, left untreated, an infection could spread to surrounding tissue causing additional inflammation and pain, or even worse become systemic. See *Matzker v. Herr,* 748 F.2d 1142 (7th Cir.1984) (holding that inmate who was denied dental care for three broken teeth stated an Eighth Amendment claim, observing that potential infection from the injury "could very easily become systemic"). Finally, a fair reading of the complaint suggests that Gutierrez did indeed suffer unnecessary pain and inflammation—as well as impairment in such life activities as sitting and standing—as a result of his delayed treatment.

sisted for several months yet did not receive any medical attention).[6]

All of this is not to say, however, that every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim, for clearly that is not the case. Thus a panel of this Court has held that failure to treat a common cold did not constitute deliberate indifference to a serious medical need, *Gibson v. McEvers*, 631 F.2d 95 (7th Cir.1980), and another panel opined that a toe whose toenail had been removed did not constitute a serious medical need, although, no doubt, painful, *Snipes v. DeTella*, 95 F.3d 586, 591 n. 1 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 980, 136 L.Ed.2d 863. Also, on a fully developed medical record at the summary judgment stage of litigation, a panel concluded that a mild case of asthma (which was allegedly exacerbated by second-hand tobacco smoke) did not rise to the level of seriousness sufficient to support a claim for relief. *Oliver v. Deen*, 77 F.3d 156 (7th Cir.1996). As Chief Judge Posner put it in *Cooper*:

> Deliberately to ignore a request for medical assistance has long been held to be a form of cruel and unusual punishment ... but this is provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized.... A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution.

97 F.3d at 916.[7]

It is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining "seriousness" at the pleading stage. Indeed, the fact that this Court has yet to fashion or endorse such a standard in the twenty years since *Estelle* was decided is, we imagine, partially a product of the difficulty involved in formulating a standard that is adequately sensitive (in the sense of capturing those medical conditions properly within the realm of Eighth Amendment concern) yet appropriately specific (*i.e.*, excluding those conditions that are not).

6. For illustrative cases from our sister circuits see, *e.g.*, *Boyd v. Knox*, 47 F.3d 966 (8th Cir. 1995) (failure to send referral for dental care for three weeks after observing inmate's swollen and infected mouth, coupled with knowledge of inmate's suffering, could support a finding of an Eighth Amendment violation); *Fields v. Gander*, 734 F.2d 1313 (8th Cir.1984) (claim stated where plaintiff alleged that defendants knew of pain resulting from infected tooth but delayed in providing dental care for three weeks); *Boretti v. Wiscomb*, 930 F.2d 1150 (6th Cir.1991) (refusal to treat wound for five days or provide fresh dressings or pain medication as prescribed stated Eighth Amendment claim); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976) (reversing Rule 12(b)(6) dismissal where complaint alleged that inmate's requests for treatment of stomach pain and abdominal distress due to bleeding ulcer were refused); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) ("a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"), certiorari denied, 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645; *Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) (reversing directed verdict for defendants where evidence indicated that jailers refused to give inmate ice packs and aspirin for sutured cut above inmate's eye); *Hunt v. Dental Dep't*, 865 F.2d 198, 201 (9th Cir.1989) (claim stated where plaintiff alleged that loss of dentures caused severe pain, bleeding gums, and breaking teeth, yet defendants took no action to provide pain relief or prescribe a soft-food diet and delayed three months in obtaining replacement dentures); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978) (11-hour delay in examining prisoner's painfully swollen and obviously broken arm may state claim), certiorari denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281.

7. While there certainly are any number of maladies far too trivial to implicate Eighth Amendment concerns and perfectly amenable to dismissal on the pleadings, we caution that, given the liberal standards governing federal notice pleading (particularly in conjunction with the leniency with which *pro se* complaints must be evaluated), the "seriousness" determination will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition.

■ A number of our sister circuits have embraced the following formulation:

A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H.1977).

See, *e.g.*, *Mahan v. Plymouth County House of Corrections*, 64 F.3d 14, 18 (1st Cir.1995); *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), certiorari denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195; *Sheldon v. Pezley*, 49 F.3d 1312, 1316 (8th Cir.1995); *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (11th Cir.1994). Similarly, the Ninth Circuit regards a medical condition to be "serious" where "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir.1992) (quoting *Estelle*), and considers the following to be indications that a prisoner has a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059–1060. We find these approaches to defining "seriousness" in the Eighth Amendment medical care context to be both sensible and workable, and shall therefore apply them here.[8]

■ Guided by these standards, we have no hesitation concluding that Gutierrez has sufficiently alleged a "serious" medical condition. The allegations clearly reveal that the Danville medical staff, including Doctors Tanner and Ehrhardt, regarded Gutierrez as having a condition mandating treatment. Doctors Tanner and Ehrhardt repeatedly prescribed treatments including sitz baths, pain medication, and antibiotics. The district court's finding that "Dr. Tanner himself thought the cyst was insignificant, believing that hot baths were the only treatment warranted," Order at 5, simply misapprehends and disregards the record. It is true that when he first evaluated Gutierrez' back on June 25, 1991, Dr. Tanner concluded that nothing was wrong and recommended nothing more than hot baths. However, as soon as he recognized that Gutierrez had an infected cyst he prescribed antibiotics and sitz baths. Over the course of the next ten months—during which Gutierrez regularly sought treatment for his infected cyst—he was routinely treated with antibiotics. Without belaboring the point, it is manifestly clear that physicians and laypersons alike would recognize that a purulent draining infection accompanied by excruciating pain and, at times, fever in excess of 100 degrees is a condition mandating treatment and the failure to provide such treatment could result in the unnecessary infliction of pain.[9] Accord-

**8.** It is worth noting that although, as a formal matter, we consider the *Thomas v. Pate* framework to be somewhat inadequate in the wake of *Estelle*, the *Thomas* factors are not wholly irrelevant to the framework we now embrace, for clearly "the potential for harm if medical care is delayed or denied" is relevant to the questions of whether a physician would view a condition as mandating treatment and whether a lay person would recognize the necessity for a doctor's attention. Thus the *Thomas* framework is largely subsumed by those we embrace today.

**9.** In finding to the contrary, the district court remarked, "the only purported 'harm' suffered by the lack of prompt medical attention was that the cyst burst, which may have caused the plaintiff pain, but appears to have been the natural and expected course of the infection, regardless of treatment." Order at 5. We are judges not doctors and have no basis for reaching any conclusions as to the "natural and expected course of the infection, regardless of treatment." However, it would seem at least as likely as not that had Gutierrez promptly received antibiotic treatment, the infection might have been arrested at an early stage and the bursting of the cyst avoided. In fact, it appears from the complaint, wherein Gutierrez alleges that the cyst burst on only three occasions despite the fact that there were clearly many more episodes of infection, that this is indeed what happened when the infection was promptly treated. In any event, the district court improperly indulged certain assumptions that were adverse to Gutierrez in resolving the motion for judgment on the pleadings.

ingly, we conclude that Gutierrez suffered from a "serious" medical condition, and turn to consider whether the defendants displayed "deliberate indifference" to his medical needs.

■ It is here—the deliberate indifference prong—that Gutierrez' Eighth Amendment claim is fatally undermined by his own factual allegations. As this Court has noted in the past, "a plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.... Allegations in a complaint are binding admissions ... and admissions can of course admit the admitter to the exit from the federal courthouse." *Jackson v. Marion County,* 66 F.3d 151, 153 (7th Cir.1995). Here Gutierrez' detailed account of the treatment he received for his pilonidal cyst over the course of ten months, see *supra,* reveals quite plainly that he cannot satisfy the "deliberate indifference" prong. To the contrary Gutierrez' allegations attest to the fact that he repeatedly received treatment over this ten-month period and that at most he experienced an isolated occasion or two where he did not receive prompt treatment.

As to the first episode recounted in his brief, the allegations reveal that when he first saw Dr. Tanner on June 25, 1991, Dr. Tanner did not regard the cyst as infected and recommended only hot baths. Tanner may have been incorrect in this assessment, but medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim. *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir.1996) ("*Estelle* requires us to distinguish between 'deliberate indifference to serious medical needs' of prisoners, on the one hand, and 'negligen[ce] in diagnosing or treating a medical condition,' on the other," quoting *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292), certiorari denied, —— U.S. ——, 117 S.Ct. 244, 136 L.Ed.2d 173; *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) ("the Eighth Amendment is not a vehicle for bringing claims for medical malpractice"), certiorari denied, —— U.S.

——, 117 S.Ct. 980, 136 L.Ed.2d 863. It was not until one week later (on July 2) that Gutierrez again requested to see Dr. Tanner. By his own account, Gutierrez was seen two days later by a licensed practical nurse who placed him on "sick call" for the next day. Although he was not seen on July 5 as scheduled, he was seen on July 8—six days after he put in his request to see Dr. Tanner—at which time Dr. Tanner prescribed antibiotics and ordered sitz baths. Although a six-day wait to see Dr. Tanner may not have been as prompt as Gutierrez may have wished, it is not an unreasonably long delay for a condition of this severity particularly in view of the fact that Dr. Tanner saw Gutierrez for the exact same complaint only one week earlier and concluded that the cyst was not infected. Indeed, the wait was only four days after L.P.N. Combs first determined that Gutierrez' cyst was infected. Moreover, when coupled with the fact that Dr. Tanner promptly prescribed a course of treatment upon determining that the cyst was infected, a reasonable factfinder could not conclude that the delay constituted deliberate indifference to Gutierrez' needs. We further note at this point that Gutierrez' medical records show that during July and August of 1991, Gutierrez was seen on at least four more occasions at which times he requested and received some sort of additional treatment order (e.g., renewal of sitz bath order, prescription of antibiotics, and pain medication). Thus Gutierrez' own allegations establish that once his cyst was diagnosed as being infected, he was promptly and comprehensively treated, thus defeating his claim of deliberate indifference as to this first episode.

Gutierrez complains about two other incidents in which he endured delays in receiving treatment for his infected cyst. The first occurred in late-August/early-September 1991, at which time his cyst was infected for "over a week" and he "submitted over 9 nine request's [sic] to be seen by Dr. without avail." Amendment(s) at P-5. When he was finally seen on September 4, 1991, "Dr. Ehrhardt ordered antibiotics along with sitz

baths." *Id.* The second incident occurred in November 1991 and involved a fourteen-day delay in receiving treatment. Again, when Gutierrez was finally seen, antibiotics and sitz baths were ordered.

As with an Eighth Amendment claim based on the conditions of confinement where we examine the totality of the conditions, see, *e.g., DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir.1988), we must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs. Upon careful review of the facts alleged by Gutierrez, particularly his detailed account of the care he received for his cyst over a ten-month period, it is clear that these occasional delays were simply isolated instances of neglect, which taken alone or collectively cannot support a finding of deliberate indifference. "A finding that a defendant's neglect of a prisoner's condition was an 'isolated occurrence,' ... or an 'isolated exception' ... to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir.1992) (citations omitted); *Wood v. Housewright,* 900 F.2d 1332, 1334 (9th Cir.1990) ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligent or isolated occurrences of neglect."). Our review of Gutierrez' proposed amendments to his complaint (and attached medical records) reveals that over the ten-month period between June 1991 and April 1992 Gutierrez sought and received some sort of treatment order for his cyst on approximately nine occasions (other than those about which he complains). Pursuant to those orders Gutierrez received pain medication, antibiotics, and sitz baths (sometimes daily to three times per week for one to two weeks at a time). Gutierrez' requests for renewal of his sitz bath card were routinely granted. In view of this overall treatment record, revealing almost continuous care throughout much of this ten-month period, the isolated delays Gutierrez encountered simply cannot support a finding of deliberate indifference.[10] Accordingly his Eighth Amendment claim was properly dismissed.

Because it is clear that Gutierrez' Eighth Amendment claim is meritless, we need not address the other issues presented by Gutierrez (*i.e.,* whether he adequately alleged personal involvement on the part of certain defendants and whether the district court erred in denying him leave to amend his complaint).

The judgment of the district court is affirmed.

---

10. We are mindful that in *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983), certiorari denied, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885, a panel of this Court observed that "[a]s a practical matter, deliberate indifference can be evidenced by repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff." That observation, however, is unavailing to Gutierrez, for, in light of Gutierrez' overall treatment, the few incidents in which Gutierrez suffered delays in his treatment simply fail to reveal a "pattern of conduct" evidencing deliberate indifference.