**Rufus WEST, Plaintiff–Appellant,**

v.

**Jolene MILLEN, Sue Waters, et al., Defendants–Appellees.**

**No. 02–4055.**

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 9, 2003.*

Decided Oct. 9, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before RIPPLE, MANION, and
HWILLIAMS, Circuit Judges.

**ORDER**

Proceeding *pro se,* Wisconsin inmate
Rufus West contends in this 42 U.S.C.
§ 1983 action that correctional officers Jo-
seph Boland and Richard Schneider, and
health care workers Jolene Millin and Su-
zanne Watters,[1] acted with deliberate in-
difference by denying him pain medicine.
The district court granted summary judg-
ment to the defendants because their de-
nial of medicine could not support a delib-
erate indifference claim. We affirm the
district court's judgment.

Mr. West is currently incarcerated at
the Wisconsin Secure Program Facility
(WSPF), formerly the Supermax Correc-
tional Institution. Mr. Boland and Mr.
Schneider have been and are currently
correctional officers at WSPF. Ms. Millin,
L.P.N., and Ms. Watters, R.N., were pri-
vately employed by Prison Health Ser-
vices, Inc., which provides health care ser-
vices at WSPF.

Prior to the events in question, Mr.
West had visited the infirmary, complain-
ing of pain in his legs, hips, and back. For
this pain, the medical staff prescribed him
500 mg of Naprosyn to be taken twice a
day "as needed." After noting in her med-
ical report that Mr. West had a "history of
malingering," the nurse practitioner, Eliza-
beth Hinkley, told Mr. West that she
would not prescribe anything stronger
than Tylenol, Ibuprofen, or Naprosyn for
his pain. Naprosyn is a nonsteroidal anti-
inflammatory drug comparable to aspirin
in its use as a pain reliever. Thomson
PDR (ed.), *Naprosyn,* 57 PHYSICIANS' DESK
REFERENCE 2891, 2892 (2003). According to
an affidavit of a WSPF Health Services
Administrator familiar with Mr. West and
his medical records, the medical staff did
not prescribe Naprosyn to Mr. West "for a
serious or life threatening illness, and
missing an occasional dose would not re-
sult in any serious medical condition."

The WSPF procedure for medication
distribution, also known as the "medication
pass policy," requires inmates to turn on
the light in their cells and be wearing
trousers to receive their medicine. Under
this distribution procedure, a correctional
guard first announces that inmates should
prepare for distribution of their medi-
cation, and then he and a nurse deliver the
medicine together to the inmates at their
cells. Prison policy specifies that a failure
to follow procedure will signify a refusal by
the inmate to receive the medicine. Ac-
cording to John Sharpe, the prison admin-
istrator, requiring inmates to wear trou-
sers prevents the inmates from exposing
themselves to and potentially offending the
nursing staff.

On two particular mornings in October
2001, Mr. West did not have pants in his
cell to wear during medication distribution
and, consequently, was not given Napro-

1. We note that the caption apparently mis-
spells the names of defendants Jolene Millin
and Suzanne Watters. Here we adopt the
spellings that these two defendants used in
their own affidavits.

syn. Mr. West claims that he did not have pants in his cell because earlier in the week he had not been issued clean clothing during the clothing exchange (purportedly because he failed to include his underwear in the bundle of dirty clothes—in violation of the prison's "all or nothing" policy that all clothes be turned in before a new bundle of clean clothes will be issued). In their affidavits, Mr. Schneider and Mr. Boland stated that during morning rounds on October 29th and 30th, they each refused to give Mr. West his Naprosyn because Mr. West was not wearing any pants. Both officers asserted that on each day Ms. Watters and Ms. Millin, respectively, verbally "okayed" the refusal. According to affidavits of Mr. West and three inmates, all four defendants told Mr. West after he requested his Naprosyn on each day, "no pants, no service," and then laughed. The officers also asserted that they did not know that Mr. West had any serious medical need requiring Naprosyn on those mornings. According to the nurses, on both days Mr. West did not appear in "any distress or need of immediate medical attention." Although he did not receive medication in the morning, Mr. West's medical file reflects that he did receive Naprosyn and other medication during the evening rounds on the two days in question.

After the two mornings on which he did not receive his Naprosyn, Mr. West submitted grievances to the Inmate Complaint Examiner (ICE). Initially, the ICE recommended dismissing Mr. West's complaints because he had not complied with the medication pass policy of wearing trousers. Upon further review, however, the ICE agreed to redress the complaint. The ICE acknowledged that Mr. West should not have been denied his medication; if he violates the policy again, the report noted, "he should be given his medicine and the [ ] violation will be dealt with afterwards."

Mr. West then brought suit against Mr. Schneider, Mr. Boland, Ms. Millin and Ms. Watters contending that they were deliberately indifferent when they denied him pain medication on the two mornings. In his complaint, Mr. West asserted that, by denying him his prescribed medicine, the defendants knowingly caused him to suffer increased pain in his legs, hips, and back, and this pain amounted to a serious medical need. The denials of his medicine, Mr. West alleged, were "on-the-spot prohibited disciplinary [ ] sanction[s]," and the defendants' carrying out of the prison policy was malicious and capricious. The defendants' refusal to give him his medication resulted in a 16–hour delay in pain relief, which, he asserts, constituted deliberate indifference.

The district court granted summary judgment for the defendants. Without much discussion, the court concluded that the four defendants "were not deliberately indifferent to plaintiff's serious medical need." The district court later denied Mr. West's motion to reconsider on the grounds that Mr. West had not provided new evidence or an additional argument proving that the defendants' denial of his medication constituted deliberate indifference to any serious medical need.

We review the grant of summary judgment *de novo*, making all reasonable inferences in favor of the nonmoving party. *Dunigan v. Winnebago County*, 165 F.3d 587, 590 (7th Cir.1999). A party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir.2001).

The Eighth Amendment forbids "unnecessary and wanton infliction of pain," including deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To prove deliberate indifference,

Mr. West must show that he had an objectively serious medical need and that the defendants acted with a "sufficiently culpable state of mind," a subjective determination. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002).

On appeal, Mr. West renews his argument that his medical need was serious. To support this argument, Mr. West explains that he was prescribed Naprosyn to be taken as needed for pain in his legs, hips, and back, and on the days in question his level of pain necessitated the medication. According to Mr. West, the 16-hour delay in pain relief due to defendants' denial of Naprosyn caused him to suffer increased pain that rose to the level of a serious medical need.

For the objective prong of the two-part test for deliberate indifference, we consider the severity of the medical problem, possible harm resulting from a denial of or delay in medical care, and whether the harm occurred. *Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir.1997). A serious medical condition need not be life-threatening; it may include "chronic and substantial pain." *Id.* at 1371, 1373 (internal quotations and citations omitted). Delays in treating painful medical conditions may establish a serious medical need. *See id.* at 1371. However, "[not] every ache and pain or medically recognized condition involving some discomfort" warrants relief under the Eighth Amendment. *Id.* at 1372.

The district court's order did not specifically examine the seriousness of Mr. West's medical need, apart from noting that West "did not medically require [Naprosyn] for pain." We have held that pain due to the withholding of medication can constitute a serious medical need. *See, e.g., Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir.1999) (inmate suffering from throat blisters due to radiation treatment);

*Gutierrez*, 111 F.3d at 1374 (inmate with painfully infected cyst); *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir.1996) (inmates with cuts, severe muscular pain and eye and skin irritation received from a beating and being maced); *see also Snipes v. Detella*, 95 F.3d 586, 591–592 (7th Cir.1996) (not giving an inmate a local anesthetic when removing his toenail is not sufficiently serious). The harm at issue here is pain that Mr. West endured during the 16 hours that he had to wait each day as result of the two missed doses of Naprosyn. Whether Mr. West's pain constituted an objectively serious medical condition is not entirely clear, but we need not decide the issue because his case falters on the second subjective component of an Eighth Amendment claim.

To survive summary judgment, Mr. West must also show that defendants had the requisite culpable mental state. He argues that in denying him Naprosyn, the defendants demonstrated malicious intent sufficient to establish a constitutional violation. In support of this argument, Mr. West first points to the "no pants, no service" comment made by all four defendants upon denying him medicine. Mr. West further asserts that the defendants knew he could not comply with the medication policy, having had no pants in his cell, yet they still maliciously denied him the medication. Finally, Mr. West suggest that the defendants' recklessness is borne out by the subsequent ICE decision directing the defendants in future situations to give Mr. West his medication, even upon another violation of the pass policy.

Deliberate indifference requires that the defendants know of a "substantial risk of harm" to the inmate's health or safety and disregard it. *Dunigan*, 165 F.3d at 591; *see Walker*, 293 F.3d at 1037. Conduct must be intentional or criminally reckless; even gross negligence is not enough.

*Chapman v. Keltner,* 241 F.3d 842, 845 (7th Cir.2001). Intentionally interfering with a medical staff's prescribed treatment in the face of a substantial risk to an inmate's health may constitute deliberate indifference. *See Zentmyer v. Kendall County,* 220 F.3d 805, 812 (7th Cir.2000); *Walker,* 293 F.3d. at 1040. However, an occasional missed dose of medicine, without more, does not violate the Eighth Amendment. *See Zentmyer,* 220 F.3d at 811–812.

In this case, Mr. West has not established that the correctional officers and the nurses had the requisite mental state. Mr. West does not dispute the veracity of the nurses' assertions that they approved the denial of medication because they did not believe that a substantial risk of harm to Mr. West existed. Nor has he disputed the assertions of the two officers, who attested that upon hearing two nurses verbally "okay" the denial, they did not consider that denying Mr. West his Naprosyn on those two mornings would result in a serious medical condition. He does point to the defendants' "no pants, no service" comment; but while that remark may demonstrate a lack of sensitivity, it does not reflect a conscious disregard for Mr. West's health. Furthermore, the defendants asserted that they viewed Mr. West's actions as a refusal under the medication pass policy, which is not the same as intentionally interfering with a doctor's prescribed treatment. The district court correctly granted judgment in favor of the defendants. Having determined that Mr. West lacked evidence to show that the defendants were deliberately indifferent, we do not address their defense of qualified immunity.

Finally, we note that Mr. West raises a host of additional arguments ranging from discovery violations to a new due process claim. But none of these contentions takes issue with the district court's conclusion that he has not established an Eighth Amendment violation; and we therefore have no need to address them here.

AFFIRMED