NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2019[*]
Decided February 11, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-1695

| | |
|---|---|
| EUGENE L. CHERRY, <br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
|    *v.* | No. 16-CV-1606 |
| SCOTT ECKSTEIN, et al., <br>    *Defendants-Appellees*. | William C. Griesbach, <br> *Chief Judge*. |

**O R D E R**

Eugene Cherry, a Wisconsin inmate suffering from a testicular hernia, sued prison officials for their deliberate indifference to his pain. He argues that officials violated his Eighth Amendment rights because they denied his request to see a doctor immediately, and instead scheduled him for an appointment several weeks later. The district court entered summary judgment for the defendants, and we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Susan Peters, a nurse practitioner at Green Bay Correctional Institution, diagnosed Cherry with hypertension and ordered him to visit the health services unit twice per week for two weeks to monitor his blood pressure. Cherry maintains, and we accept for purposes of this decision, that at one such check September 29, 2016, he complained to Peters and a nurse about his "excruciating" testicular pain, but they refused his request to see a doctor immediately. Instead they told him to "take Tylenol" and submit a written request for a doctor's appointment.

On October 5, Cherry submitted a Health Services Request for an appointment with a doctor to discuss "cold medicine and a pain in [his] right testicle." Mary Alsteen, a nurse clinician, examined Cherry the following day. Although Cherry attests that he told Alsteen that his pain was "excruciating," Alsteen avers that he "walked with no distress" and that he reported his pain to be a zero out of ten during the appointment (he claimed that the pain struck three or four times per day). Treatment notes, moreover, reflect that Cherry denied urinary problems, testicle swelling, redness, or lumps. Alsteen scheduled him for a non-urgent doctor appointment. About three weeks later, at a checkup with nurse Dan Dassow, Cherry again complained of testicle pain and demanded unsuccessfully to see a doctor "immediately."

Meanwhile, a prison complaint examiner dismissed a grievance Cherry had submitted after health services providers denied his September 29 request to see a doctor. After interviewing Jean Lutsey, the health services manager, the examiner determined that the providers who treated Cherry had responded appropriately. Per prison policy, each appointment's length is scheduled based on the service, so there was no time for a doctor to examine Cherry when he visited the health services unit for blood-pressure checks. And Cherry had been scheduled for a doctor appointment after he submitted a request form that complied with prison policy.

On October 26, 2016, Dr. Lisa Allen examined Cherry and diagnosed him with an "intermittently symptomatic" inguinal hernia. She noted that Cherry "appeared to be in no acute distress," and that he again denied "swelling, redness [or] … lesions." She counseled Cherry on the importance of "conservative measures prior to any invasive procedures" and prescribed a scrotal support belt, which health services officers provided. Dr. Allen further recommended an ultrasound within two months; Peters scheduled one for December 8. The ultrasound confirmed Dr. Allen's diagnosis, but Cherry's hernia was "without obstruction or gangrene." Health services officers continued to monitor Cherry's symptoms, prescribing painkillers and replacing the belt when he requested it, though Cherry complained it did little to relieve his symptoms.

Dr. Allen, moreover, had warned Cherry of the signs that surgery or another intervention was warranted, but Cherry reported none.

Cherry sued Peters, Dassow, Alsteen, Lutsey, and the prison warden for deliberate indifference to his serious medical needs based on their failure to send him to a doctor immediately after he reported his pain at his appointment on September 29. The district judge entered summary judgment for the defendants, and we review that decision de novo, viewing the facts and drawing all reasonable inferences in Cherry's favor. *Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018).

On appeal, Cherry maintains that prison medical staff were deliberately indifferent to his medical needs by delaying his doctor appointment for the four weeks between September 29 and October 26. He argues he raised a genuine issue of material fact because his affidavit—in which he swears that he repeatedly reported excruciating pain yet was denied immediate doctor visits—squarely contradicts defendants' accounts of those visits. We agree with the district judge that any factual dispute is immaterial, however, because, even accepting his version of the facts, a reasonable jury could not find in Cherry's favor.

To survive summary judgment on his deliberate indifference claim, Cherry needed to present evidence showing (1) his medical need was objectively serious, and (2) prison officials consciously disregarded his need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Here, Cherry's claim is premised on allegations that the defendants unreasonably delayed treatment. Even without a corresponding exacerbation of an underlying condition, "deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012*); see also Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997) ("[D]elays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims."). Whether a delay is tolerable "depends on the seriousness of the condition and the ease of providing treatment." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

Cherry has failed to meet his burden of providing sufficient evidence from which a reasonable jury could conclude that the defendants unnecessarily prolonged his pain by unreasonably delaying treatment. Even assuming that his need was objectively serious and that he told health services employees that he was experiencing "excruciating pain," the record reveals that Peters, Alsteen, and Dassow did not disregard Cherry's condition. To the contrary, they treated him, told him how to request an appointment, and scheduled him for one with Alsteen the day after he

submitted his request. Alsteen examined Cherry, concluded that his pain was not urgent, and scheduled him for a doctor appointment to take place three weeks later. Given the thoroughness of Alsteen's examination and Cherry's lack of symptoms, we cannot say that the decision to schedule a non-urgent doctor appointment constituted deliberate indifference. *See Gutierrez*, 111 F.3d at 1374 (delaying appointment based on recent evaluation of patient's condition was reasonable). And Dr. Allen's conservative treatment—prescribing only symptomatic relief and an ultrasound within two months—suggests that the outcome would not have differed even if an earlier doctor's appointment had been scheduled. The delay, therefore, could not have caused Cherry to unnecessarily suffer pain that could have been mitigated by an earlier appointment. *Cf. Greeno v. Daley*, 414 F.3d 645, 651, 655 (7th Cir. 2005) (finding deliberate indifference where delaying patient-requested intervention postponed successful treatment).

Cherry's claims also fail against the remaining defendants. Lutsey did not know of Cherry's request until after Cherry submitted his grievance and was already scheduled for a doctor appointment. The warden, moreover, was not notified until after Cherry filed his lawsuit. A defendant cannot be liable under § 1983 without direct involvement in the allegedly unconstitutional acts. *See Farmer*, 511 U.S. at 837–38; *Arnett v. Webster*, 658 F.3d 742, 755–56 (7th Cir. 2011).

AFFIRMED