**John DOE\*, Plaintiff–Appellant,**

v.

**George C. WELBORN, Warden, Austin Randolph, Unit Manager, and M. Mifflin, Defendants–Appellees.**

**No. 95–2851.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1996.

Decided April 11, 1997.

As Amended May 29, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 18, 1997.

---

\* Since the state has no objection, the court has granted Plaintiff's request to change his name to a pseudonym even though to this point he has litigated under his own name. Litigators should take note that such requests, especially this late in the process, do not find favor with this court.

Lauren Robel, Cynthia Bauerly, Law Student (argued), Bloomington, IN, for plaintiff–appellant.

Paul Racette (argued), Office of Attorney General, Civil Appeals Division, Chicago, IL, for defendants–appellees.

Before RIPPLE, MANION, and DIANE P. WOOD, Circuit Judges.

MANION, Circuit Judge.

John Doe, a self-described prison snitch, alerted officials at the Menard Correctional Center that a prison gang had placed a "hit" on the Center's superintendent. On another occasion, he set fire to his cell to draw the officials' attention to an attempted prison escape by two gang members. Following each incident, the defendants placed Doe in protective custody for his own safety; they then transferred him to the Joliet Correctional Center less than two months after the thwarted escape. But during those two months, Doe claims he was threatened constantly (in his words, "terrorized") by gang members housed in nearby cells within the protective custody unit. He sued the prison officials under 42 U.S.C. § 1983, claiming that they violated his eighth amendment right to be free from cruel and unusual punishment principally by waiting two months before transferring him to another facility. After a bench trial, the magistrate judge entered judgment for the defendants on the

ground that they were not deliberately indifferent to Doe's safety. We affirm.

## I.

In February 1991, John Doe was an inmate at the Menard Correctional Center, a maximum security facility operated by the Illinois Department of Corrections. On February 6, correctional officers found a shank (homemade knife) under his bed. Two days later, Doe told correctional officers where they could find additional shanks and that certain inmates had placed a "contract" or "hit" on Menard's superintendent. Shortly afterward, the prison officials moved Doe into the protective custody unit, the most secure unit in the Menard facility.

On February 22, Doe was transferred to the segregation unit pending investigation of the shank incident. Three days later, on February 25, he started a fire in his cell to alert prison officials to an ongoing escape by two other inmates. Doe apparently had to argue with the correctional officers before they took him seriously, and it is possible that other inmates jailed nearby heard the argument. Doe convinced the officers he was telling the truth in time for them to catch the would-be escapees.

The correctional officials again considered Doe at risk for turning in other inmates. Accordingly, the officials returned Doe to protective custody on the same day as the attempted escape. In addition, the officials began the paperwork to transfer Doe to another maximum security institution. Doe remained in protective custody for less than two months when, on April 17, 1991, he was transferred to the Joliet Correctional Center, a facility typically used to house smaller, more vulnerable inmates.

In December 1991, Doe filed a pro se complaint under 42 U.S.C. § 1983. He named as defendants George C. Welborn, former warden at Menard, former superintendent Austin Randolph, and Officer Mark Mifflin.[1] The gist of Doe's complaint was that while he was in protective custody, the defendants violated his eighth amendment right to be free from cruel and unusual punishment by failing to protect him from a physical assault and verbal abuse on the part of other inmates. The district court appointed counsel to represent Doe, and the parties consented to trial before a magistrate judge.

Doe's trial testimony focused on an incident involving Corrections Officer Mifflin. Shortly after Doe was placed in protective custody, Mifflin approached him because he was playing his radio too loud in his cell. According to Mifflin, Doe asked the officer whether he knew who Doe was. Mifflin responded that Doe was the person who started the fire, but that he would receive no special privileges for doing so.

Doe claimed that Mifflin's reprimand was loud enough to be overheard by other inmates housed in the protective custody gallery. Indeed, according to Doe, other inmates must have heard the remarks because they began harassing him. They made threatening comments to him and threw things into his cell. According to Doe, at least one inmate physically assaulted him in the shower on March 21. However, the correctional officer who ran the shower line that day testified that no assault occurred. Other than the alleged shower assault, Doe conceded at trial that he suffered no injuries while in protective custody awaiting his transfer.

Following a two-day bench trial, the district court issued several findings of fact. Most significant for purposes of this appeal are these: on two separate occasions, the defendants transferred Doe to the protective custody unit, which was the most secure unit at Menard; after placing Doe in that unit a second time on February 25, 1991, the Menard officials immediately started the paperwork to transfer Doe to another facility; Doe's claim of a shower assault could not be substantiated by medical records and was contradicted by the officer who had operated the shower line; and from February 25 until

---

1. Doe's original complaint named two additional defendants. One was dismissed by the district court and the other was dismissed by agreement of the parties.

his transfer on April 17, Doe was housed in the protective custody unit and was not assaulted. The court entered judgment for the defendants because the evidence established they were not deliberately indifferent to Doe's safety and security during his stay in protective custody.

On appeal, Doe has new counsel and, to some extent, a new emphasis. Gone is his claim that he was the victim of a physical assault. The district court determined that the single assault alleged by Doe at trial—the shower incident—could not be substantiated. We would overturn that finding only if it were clearly erroneous, *Ornelas v. United States*, — U.S. —, —, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), mainly because the district court was in a far better position to compare Doe's credibility with that of the officers who insisted the assault never occurred. It matters not: on appeal, Doe's new counsel do not ask us to overturn this finding at all. Rather, they contend that Doe's compensable damages under the Eighth Amendment are his "terror, psychological harm and deterioration" experienced while in protective custody from February 25 to April 17 and resulting from his living in constant fear of his fellow inmates.[2]

## II.

At the outset, it is worth noting what this case does *not* involve: any proven physical assault of inmate Doe. On appeal, Doe's counsel argue that his compensable damages are *psychological* harm suffered from living in constant fear of assault.

■ Recent Supreme Court precedent has shed additional light on the Eighth Amendment. In *Farmer v. Brennan*, a case involving a prisoner who alleged he was assaulted by a cellmate, the Supreme Court stated that "[a] prison officials' 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994). Under the Court's "de-

liberate indifference" standard, a prison official "may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. at 847, 114 S.Ct. at 1984. Thus, an inmate suing under § 1983 for a violation of his eighth amendment right to be free from cruel and unusual punishment must satisfy both the objective (substantial risk of serious harm) and the subjective (knowing disregard) components of the test set forth in *Farmer*.

■ All of this presumes a critical condition precedent to the plaintiff's case has been satisfied: proof of actual injury. Section 1983 is a tort statute, *Button v. Harden*, 814 F.2d 382, 383 (7th Cir.1987), which means that the defendant must breach a duty owed to the plaintiff, who must suffer cognizable legal harm. *Babcock v. White*, 102 F.3d 267, 271 (7th Cir.1996).

Ordinarily, the injury is physical and obvious. But not always. In fact, we recently discussed the type of injury actionable under § 1983 in *Babcock*. Babcock pleaded with prison officials to protect him from members of a gang known as the Mexican Mafia. Even though never assaulted by anyone, he sued prison officials under § 1983 for their purported deliberate indifference to his safety concerns. "Fairly read, Babcock's complaint allege[d] that he suffered severe psychological distress as a result of finding himself in the proximity of those who would kill him if given the opportunity." 102 F.3d at 271. The district court granted summary judgment to the individual defendants.

On appeal, we noted Babcock's claim presented a "unique situation" because the danger to which he allegedly was exposed never materialized. *Id.* at 270. Babcock did not allege a "'failure to prevent harm,' *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977, but a failure to prevent exposure to risk of harm." 102 F.3d at 272. We concluded that however legitimate Babcock's fears might have been,

---

2. In his amended complaint, Doe sought damages for his "experience [of] fear, mental an-

guish, depression and suicidal ideations."

he was not entitled to monetary compensation because "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.* An allegation that prison officials exposed a prisoner to a "risk of violence at the hands of other inmates," *id.* at 273 (emphasis added), does not implicate the Eighth Amendment's Cruel and Unusual Punishments Clause.

As we noted in *Babcock,* this does not "preclude suits by prisoners under the Eighth Amendment grounded solely on claims of psychological injury." *Id.* The Constitution "does not countenance psychological torture merely because it fails to inflict physical injury." *Id.* Rather, each case is taken on its own facts and "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). This is why the Supreme Court consistently has drawn a distinction between an excessive force claim and a conditions-of-confinement claim such as Babcock's and, in this case, Doe's. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim," *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000, while a plaintiff in an excessive force case "need not allege 'significant injury' in order to survive dismissal." 102 F.3d at 273.

■ Because the district court did not find that Doe was assaulted in the shower, a determination Doe's counsel do not contest on appeal, we are left with a conditions-of-confinement case in which the purported injury is purely psychological. In their main brief, Doe's lawyers phrase it this way: "[I]n this case, the damages [are] the terror, psychological harm and deterioration, and suicide attempts that come from living with the constant threat of death. These damages are compensable under the [E]ighth [A]mendment." In Doe's case, they are not. We see little difference between Doe's claim

and Babcock's, which was dismissed on summary judgment (Doe received the benefit of a trial). Both claim to have lived in fear of assault, but neither was assaulted. "Babcock's claim of psychological injury does not reflect the deprivation of 'the minimal civilized measures of life's necessities,' *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), that is the touchstone of a conditions-of-confinement case." *Id.* at 272. We can say the same of Doe's case. Like Babcock, he showed neither physical harm nor the kind of extreme and officially sanctioned psychological harm that might support a claim for damages under the Eighth Amendment.[3]

■ Even if Doe were able to establish compensable injuries under the Eighth Amendment, we would agree with the district court that the prison officials in this case could not be held liable. There is no liability under the Cruel and Unusual Punishments Clause if a prison official has responded reasonably to a risk of harm. *See Farmer,* 511 U.S. at 844, 114 S.Ct. at 1982–83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). This is simply another way of saying that a plaintiff has the burden of proving the subjective (knowing disregard) component of the test elaborated in *Farmer. See id.* at 845, 114 S.Ct. at 1983 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

In this case, after two days of testimony, the district court concluded that the defendants were not deliberately indifferent to Doe's safety. We agree with the district court because we find nothing in the record

---

3. While money damages are unavailable in a case like this one, neither *Farmer v. Brennan* nor *Babcock v. White* rules out injunctive relief "to prevent a substantial risk of serious injury from ripening into actual harm." 511 U.S. at 845, 114 S.Ct. at 1983. While Doe did seek injunctive relief in the form of a transfer to a medium security prison, he dropped the issue on appeal. His complaint now is that he is entitled to money damages because he should have been transferred sooner.

other than reasonable responses to Doe's circumstances. After Doe "snitched" on the prison gang that was contemplating a "hit" on the prison superintendent, the defendants placed Doe in protective custody for his own safety. After he set fire to his cell to alert guards of an ongoing escape attempt, they again placed and kept him in protective custody. In fact, they expedited his transfer from Menard altogether; he spent less than two months in protective custody after the fire incident prior to his transfer to Joliet. Moreover, the district court rejected the argument that Officer Mifflin placed Doe in danger by telling him to turn down his radio, or that he leaked to other inmates Doe's prison role as a "snitch." At bottom, Doe directs us to no record evidence that casts any doubt on the district court's conclusions, and our own review of the record convinces us that Doe's case properly was lost on the merits at trial.

### III.

The decision of the district court is affirmed.