Kevin T. **ROBESON** and Thomas
J. Clark, Plaintiffs,

v.

Joseph M. **SQUADRITO,**
et al., Defendants.

No. 3:97–CV–369RM.

United States District Court,
N.D. Indiana,
South Bend Division.

April 7, 1999.

Christopher C Myers, Myers and Geisleman, Fort Wayne, IN, Samuel L Bolinger, Fort Wayne, IN, for plaintiffs.

John O Feighner, Haller and Colvin, Fort Wayne, IN, Janet L Parsanko, Indiana Attorney General, Indianapolis, IN, for Joseph Squadrito, Henry E. Fink, Henry Dill, defendants.

G William Fishering, III, Laura L Reuss, Beers Mallers Backs and Salin, Fort Wayne, IN, John O Feighner, Haller and Colvin, Fort Wayne, IN, Janet L Parsanko, Indiana Atty. General, Indianapolis, IN, for Linda Bloom, Jack McComb, Ed Raosseau, defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

In this suit, Kevin Robeson and Thomas Clark challenge certain conditions they claim existed during their stays in the Allen County Jail in 1997 and 1998. Mr. Robeson and Mr. Clark sue Sheriff Joseph Squadrito, Jail Commander Henry Dill, Lieutenant Henry Fink, and Allen County Commissioners Ed Rousseau, Linda Bloom, and Jack McComb. All defendants seek summary judgment on all of Mr. Robeson's and Mr. Clark's claims. Granting of the defendants' summary judgment

motions with respect to Mr. Robeson's claims is warranted for the reasons set forth below. No response to the motion was filed on behalf of Mr. Clark; judgment on his claims is appropriate on the bases set forth in the defendants' motions, as well as those discussed below with respect to Mr. Robeson.

## I. BACKGROUND

Mr. Robeson was incarcerated in the Allen County Jail for the following approximate periods: February 11 to March 18, 1997, June 25, 1997 to July 2, 1997, and April 6 to 20, 1998. He now raises claims against the Allen County Sheriff, Jail Commander, a lieutenant, and the Commissioners under the Eighth Amendment and Fourteenth Amendments to the United States Constitution.

Mr. Robeson challenges circumstances he claims existed during his stays at the Allen County Jail. He claims the jail was severely overcrowded (sometimes housing over 700 inmates, though designed to house only 382) and that he was kept in a day room and so slept on the floor. He claims the day room was so crowded that he couldn't even walk through it, and that sleeping on his thin mattress on the concrete floor caused stiffness in his back. Of the four shower heads, only one functioned consistently, and he was denied an indigent pack of envelopes, paper, pencil, deodorant, and shampoo for weeks. He claims he was the victim of an assault in March 1997 because no correctional officer was available to supervise or provide security. He also claims that he was denied adequate recreation and exercise. Mr. Robeson claims that his diet was not appropriate for his hypoglycemic condition, that the servings of food were too small, and that he was denied his high blood pressure medication.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) "mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." "Where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

Although the moving party must initially identify the basis for its contention that no genuine issue of material fact exists, the nonmoving party cannot rest on his pleadings, but must produce his own evidence. Rule 56(e) requires that the nonmoving party who bears the burden of proof on an issue allege specific facts showing that there is a genuine issue for trial by his own affidavits or by the depositions, answers to interrogatories, and admissions on file....

In considering whether there are any genuine issues of material fact we view the record and extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Where a fact is disputed, the nonmoving party must show that the disputed fact is material under the applicable law. The applicable law will dictate which facts are material. Only disputes that could affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.

*National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 264–265 (7th Cir.1996) (citations omitted).

## III. DISCUSSION

### A. Standard

 Mr. Robeson's claims are properly analyzed under the Eighth Amendment,[1] which prohibits "cruel and unusual" punishment. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The standard contains two components: (1) objectively, the injury must be sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, the prison official's actual state of mind must be one of "deliberate indifference" to the deprivation. *See Farmer v. Brennan*, 511 U.S. 825, 837–838, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Tesch v. County of Green Lake*, 157 F.3d 465, 473 (7th Cir.1998). The objective component requires an "extreme deprivation" that denies the "minimal civilized measure of life's necessities," *id.* at 834, 114 S.Ct. 1970, and forces the plaintiff to endure a situation that is "beyond the bounds of human decency." *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Constitution "does not mandate comfortable prisons" or jails, and only those deprivations denying " 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. at 298, 111 S.Ct. 2321 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment," *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987); *see also Thomas v. Ramos*, 130 F.3d 754 (7th Cir. 1997); *French v. Owens*, 777 F.2d 1250, 1251 (7th Cir.1985) ("In determining whether prison conditions constitute punishment, and thus violate the Constitution, the court should consider whether the conditions complained of are compatible with 'the evolving standards of decency that mark the progress of a maturing society.' ").

### B. Conditions of Confinement

 Mr. Robeson's principal complaint pertains to overcrowding at the Allen County Jail. Overcrowding itself is not an Eighth Amendment violation, but if it "leads to deprivation of food, proper sanitation, or medical care, or when it is accompanied by dangerous conditions, it may amount to cruel and unusual punishment." *Jensen v. County of Lake*, 958 F.Supp. 397, 406 (N.D.Ind.1997) (citing *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)); *see also Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Mr. Robeson does not complain solely of overcrowding; he asserts several deprivations, the cumulative effect of which he believes amounts to cruel and unusual punishment. The court's task, then, is to decide whether the evidence he presents, viewed in the light

---

**1.** The Eighth Amendment's prescription against cruel and unusual punishments applies only to persons convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Robinson v. Moses*, 644 F.Supp. 975 (N.D.Ind.1986). The rights of pre-trial detainees are derived from the Fourteenth Amendment's Due Process Clause. *Robinson v. Moses*, 644 F.Supp. at 980. The standard under the Due Process Clause for pre-trial detainees "is the same standard that applies to prisoners bringing claims under the eighth amendment." *Robinson v. Moses*, 644 F.Supp. at 981 (citing *Hamm v. DeKalb Co.*, 774 F.2d 1567, 1573 (11th Cir.1985)). The plaintiffs' complaint (filed on June 8, 1998 and styled as their "First Amended Complaint," though in reality their second amended complaint) alleges that the plaintiffs were "inmate[s] awaiting transfer to the Indiana Department of Corrections" at the times relevant to their suit, rather than pre-trial detainees.

most favorable to him, raises a genuine issue of fact for trial. The court has carefully reviewed the evidence Mr. Robeson presents, specifically including his deposition testimony and the photographs and videotape depicting the density and conditions existing at the jail, and concludes that Mr. Robeson has not raised a genuine issue of fact regarding the objective component of an Eighth Amendment violation.

■ When the evidence is viewed as favorably to Mr. Robeson as possible, Mr. Robeson spent about five weeks in a crowded day room, sleeping on a thin mattress on the floor for weeks, which caused his back to stiffen. Of the four shower heads, only one consistently functioned for the 36 + inmates in the block.[2] Another inmate assaulted Mr. Robeson in March 1997 after seeing that no correctional officer was supervising them. Mr. Robeson was not taken to the gymnasium for recreation or allowed out of the day room to move around. The servings of food he received were small, sometimes as little as two to four teaspoons. Mr. Robeson asked for an indigent pack containing envelopes, paper, pencil, deodorant, and shampoo, but the request was denied for a period of weeks.

The conditions of Mr. Robeson's confinement at the Allen County Jail do not rise to the level of deprivations of the minimal civilized measure of life's necessities. Mr. Robeson slept on a mattress on the floor for several weeks in a crowded day room, but the events and environment he describes do not amount to more than discomfort or inconvenience. Sleeping on a mattress on the floor, without aggravating circumstances (*e.g.*, no mattress, low temperature without blankets, unreasonable vermin infestation), is not of constitutional magnitude. *See Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986); *Brown v. Crawford*, 906 F.2d 667, 672 (11th Cir.1990); *Powell*

*v. Cook County Jail*, 814 F.Supp. 757, 759 (N.D.Ill.1993); *Lynch v. Sheahan*, 92 C 1087, 1992 WL 132525 (N.D.Ill. May 29, 1992). The uncontroverted evidence establishes that Mr. Robeson had a mattress and a blanket[3] and received clean sheets every week. Although Mr. Robeson claims sleeping on the floor caused stiffness in his back, he doesn't remember whether he complained to jail nurses or staff. Robeson dep. at 30. The evidence also shows that the day room's four toilets, four wash basins, drinking fountain, and television functioned; he could shower, watch television, and move about the day room when he wanted (unless the inmates were restricted to their beds during a "lock down"). *See* Robeson dep. at 16, 17–20, 22, 27, 31, 46–47, 52–53, 64–65.

Mr. Robeson argues that he was denied exercise. The Seventh Circuit has explained that "lack of exercise could rise to a constitutional violation '[w]here movement is denied and muscles are allowed to atrophy, (and) the health of the individual is threatened.'" *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir.1988) (quoting *French v. Owens*, 777 F.2d at 1255). Although he was not taken to the gymnasium to exercise, Mr. Robeson agreed in his deposition that he did push-ups, sit-ups, stretching exercises, and ran in place. *See* Robeson dep. at 28. The evidence could not allow a finding that his movement was limited to the point of threatening his health. *See Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir.1997). *Cf. Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996).

■ The jail has an obligation to provide nutritionally adequate food. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir.1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Mr. Robeson claims that the jail's food servings were too small

---

**2.** The 18 bunks were full, but the court was not given an exact number of inmates sleeping on the floor.

**3.** His blanket was thin and had holes, but Mr. Robeson admits he did not ask for a replacement. *See* Robeson dep. at 23.

and that he was not provided a proper diet. As evidence to support that claim, he cites his deposition testimony in which he restates his allegations from the complaint that "the diet was inadequate with very small portions. The bean servings contains [sic] four teaspoons of product. Apple sauce contains about two teaspoons. Cabbage and salad about two teaspoons. Servings are usually not full servings by any dietary standard." In response, the defendants submit an affidavit by Fred Fletcher, Vice President of Nutrition Therapy Associates, Inc., stating that Patricia Thomas, a Registered Dietician and Licensed Dietician reviewed the menu used by Allen County Jail and found it to provide at least 3000 calories per day and adequate amounts of nutrients.[4] In the face of this evidence, Mr. Robeson's lay opinion that the servings were too small and the diet inadequate does not raise a genuine issue of fact for trial, even when combined with the other conditions he alleges.

 No genuine factual issue exists for trial with respect to the assault that Mr. Robeson attributes to the jail's failure to supervise or provide security. Although prison officials "have a duty ... to protect prisoners from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Eighth Amendment "is not violated by every injury inflicted by one inmate on another," *Luttrell v. Nickel*, 129 F.3d 933, 935 (7th Cir.1997) (citing *Langston v. Peters*, 100 F.3d 1235, 1237 (7th Cir.1996)). To succeed on a claim for failure to prevent harm, a plaintiff must show that the injury suffered was, objectively, "sufficiently serious," and that the prison official' state of mind was that of deliberate indifference to the extent of condoning the attack (subjective component). *See Farmer v. Brennan*, 511 U.S. at 834, 114

S.Ct. 1970; *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir.1997).

The evidence Mr. Robeson provides cannot stave off summary judgment. Mr. Robeson offers his deposition in which he states that he and another inmate had a fight after "[t]he other inmate looked in the satellite to make sure there was [no officer] present." Robeson dep. at 38. He says he had "bruises and soreness," but suffered "nothing major" in terms of injury as a result of the assault. Even if the injuries Mr. Robeson suffered could be considered sufficiently serious to support a constitutional claim, a proposition this court strongly doubts, he offers no evidence at all to show that any jail employee was deliberately indifferent to his safety, i.e., had "actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir.1997) (quoting *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir.1991)).

Mr. Robeson claims he was denied an indigent pack containing envelopes, paper, pencil, deodorant, and shampoo, for a period of weeks, but offers no evidence to show he lacked any of those items for any period of time. No constitutional violation could be found on this record.

The conditions Mr. Robeson describes are not ideal, but neither are they appalling or below the minimum standards of decency, even considering the cumulative effect of the conditions and their duration. *See Doe v. Welborn*, 110 F.3d 520, 524 (7th Cir.1997). On the record before the court, summary judgment is appropriate on Mr. Robeson's claims regarding the conditions of his confinement at the Allen County Jail.

---

4. The defendants submit a supplement revising this evidence to reflect that the sack lunch meals the jail began serving around the time of Mr. Robeson's stays in the jail also meets appropriate nutritional standards.

### C. Medical Treatment Claims

█ In the medical care context, the test set forth in *Farmer v. Brennan* and *Wilson v. Seiter* is expressed in terms of whether there was deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A medical need is serious if it involves a condition of urgency, significantly affects an individual's daily activities, or may produce death, degeneration, or extreme pain. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997). The state of mind required to establish deliberate indifference includes two elements: (1) an official's actual knowledge of the serious medical need; and (2) a response that amounts to reckless disregard for the known serious medical need, either by inaction or woefully inadequate action. *See Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir.1998). *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Because deliberate indifference is comparable to criminal recklessness, a plaintiff must demonstrate more than an inadvertent failure to provide medical care or negligence in treating a medical condition. *Estelle v. Gamble*, at 105–107, 97 S.Ct. 285; *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785 (7th Cir.1995). He must show "something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.1992) (citing *McGill v. Duckworth*, 944 F.2d 344 (7th Cir.1991)). Negligence or medical malpractice do not constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. 285.

█ Mr. Robeson has not raised a genuine issue of fact regarding whether the defendants were deliberately indifferent to his high blood pressure. In his deposition, Mr. Robeson says he went without his blood pressure medication for 36 hours. Although he does not indicate how often he was supposed to take the medication, he states that not having it for 36 hours "would increase my blood pressure tremendously." *See* Robeson dep. at 137–138. This evidence could not support a finding that any of the defendants violated Mr. Robeson's rights under the Eighth Amendment because, assuming Mr. Robeson's high blood pressure to be a serious medical need, the evidence he presents of not having received his medication for 36 hours does not allow an inference of criminal recklessness. We know that he missed his medication, but have no hint as to why, let alone evidence showing or tending to show that he was denied the medication out of anything "approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir.1992) (citing *McGill v. Duckworth*, 944 F.2d 344 (7th Cir.1991)). "Negligence, gross negligence, or even recklessness as used in the civil tort sense, are insufficient to support and Eighth Amendment claim." *Williams v. Cearlock*, 993 F.Supp. 1192, 1197 (C.D.Ill. 1998). Nothing in the record suggests that Mr. Robeson suffered any injury or harm as a result of the 36–hour denial of his blood pressure medication while at the Allen County Jail. *See id.* There is simply no evidence from which a jury could conclude that this 36–hour period was anything other than an isolated and accidental occurrence in Mr. Robeson's treatment. *See Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir.1997).

█ Mr. Robeson also complains of the jail's treatment of his hypoglycemic condition. Mr. Robeson's response brief narrows the issues to two: (1) the five days he went without his hypoglycemic diet (*i.e.*, 2400 calories per day and a sack lunch at night, *see* Robeson dep. at 75) in June or July, 1997[5]; and (2) his stay from April 6 to April 20, 1998, during which he claims he never received his hypoglycemic diet.

---

**5.** Mr. Robeson's response brief says July, but the deposition pages he cites say June.

On the first issue, Mr. Robeson presents his deposition testimony that his special diet was delayed for five days, though "it didn't actually endanger my health I don't believe." Robeson dep. at 84. Regarding his April, 1998 stay at the jail, he states in his deposition that he did not get his special diet the entire time, which caused him the "normal health problems of feeling faint, weak, shaky." *See* Robeson dep. at 98–99. The defendants claim that the jail responded appropriately to Mr. Robeson's medical conditions. As to the April, 1998 time period, the defendants provide the affidavit of Nurse Mary Jane Collins, who states that Mr. Robeson's blood sugar was tested daily from April 6 to April 14 in accordance with the physician's orders; that the readings were in the normal range from April 6–14 (with the April 12 reading falling just below normal); and that no special diet was ordered because his sugar levels were normal.

Like his claim regarding his blood pressure medication, Mr. Robeson has presented no evidence from which a reasonable trier of fact could conclude that these incidents relating to his hypoglycemia resulted from deliberate indifference to Mr. Robeson's serious medical needs. With respect to the five days he went without his special diet in the summer of 1997, the record reveals that Mr. Robeson arrived at the Allen County Jail on June 25, 1997 from the Department of Corrections, and requested a sick call to discuss his need for extra meals the next day. Mr. Robeson talked to a nurse or doctor about getting his special diet, and began receiving the extra meals by June 30, four days after his request. Regarding his April, 1998 stay at the jail, Mr. Robeson offers no evidence to refute the defendants' account of daily blood sugar tests from April 6–14, results within the normal range, or the medical decision that he did not need the extra meals. The evidence before the court contains no indication whatsoever that the jail was deliberately indifferent to his hypoglycemic condition, *see Gutierrez v. Peters*, 111 F.3d 1364, 1374–1375 (7th Cir.1997) (six-day delay to see doctor for pilonidal cyst not unreasonably long in circumstances), and his disagreement with their treatment decision does not amount to a constitutional claim. *See id.; Snipes v. DeTella*, 95 F.3d 586, 590–591 (7th Cir. 1996). Summary judgment is appropriate on Mr. Robeson's claims regarding his medical care.

## IV. CONCLUSION

For the reasons explained above, the court finds that the plaintiffs' claims do not, as a matter of law, amount to violations of their constitutional rights. Summary judgment is appropriate on the plaintiffs' claims against all defendants on this basis, and the court need not address the defendants' other bases for summary judgment. Although the court finds insufficient evidence to allow this case before a jury, it does not mean this order as an endorsement of the conditions or events the plaintiffs describe in their complaint. Finding no genuine issues of fact for trial, the court GRANTS the defendants' summary judgment motions [docket entries 120 and 125], and VACATES the April 19, 1999 final pretrial conference and April 26, 1999 jury trial. The clerk shall enter judgment for the defendants and against both plaintiffs.

SO ORDERED.