NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 16, 2010[*]
Decided January 5, 2011

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-2023

| | |
|---|---|
| CHARLES A. KIMBROUGH, JR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 08-CV-641 |
| MARK STUTLEEN, et al., *Defendants-Appellees*. | J. P. Stadtmueller, *Judge*. |

**O R D E R**

Charles Kimbrough, Jr., a Wisconsin inmate, was hospitalized with anemia likely caused by a Vitamin B-12 deficiency. In this action under 42 U.S.C. § 1983, he claims that a prison nurse and three guards were deliberately indifferent to his condition because they did not take him to the prison infirmary the day before he was hospitalized. In granting summary judgment for the defendants, the district court assumed that Kimbrough's anemia

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

was serious but concluded that a jury could not find from the evidence that the defendants were aware of, or indifferent to, his illness or that he suffered any harm due to their alleged inaction. We agree with the court's analysis and affirm the judgment.

Our focus is on the events of September 20, 2007, the day before Kimbrough was hospitalized. His § 1983 claim concerns that date exclusively, since the four named defendants were not involved in his medical treatment before or after that date. Unless otherwise noted, the following facts were undisputed at summary judgment.

Kimbrough, who was then 26, was summoned to give blood and urine specimens on September 20. Nine days earlier a nurse had examined him after he complained of shortness of breath, a rapid heart beat, weight loss, dizziness, and numbness in his fingertips. At the time he was listed as a participant in Ramadan fasting that had started on August 22, but he maintains that he never fasted before he saw the nurse. She told him to eat regular meals, drink more water, and rest. She also consulted a prison doctor. The doctor (who, like this first nurse, is not a defendant) ordered lab tests to determine the source of Kimbrough's symptoms but did not perceive a need for emergency treatment.

When Kimbrough arrived in the room where he was to give his specimens, he was met by Kathy Lemons and Daniel Levesque, both defendants. Lemons, a nurse, drew a blood sample while Levesque, a guard, observed. Kimbrough was unable to give a urine sample, however, and after two unsuccessful tries he left the room without permission and went back to his cell. Lieutenant Mark Stutleen, also a defendant, went after Kimbrough and escorted him back to Nurse Lemons. When Kimbrough still could not give a urine sample, Stutleen and the fourth defendant, guard Curt Flannery, escorted him to a cell near the infirmary. He was told to call for a nurse if necessary. Kimbrough says that he passed out, but his medical records document—and he does not dispute—that he delivered his urine specimen to an unidentified guard at some point before the day was over.

The parties disagree about Kimbrough's physical state on September 20. Lemens and Levesque insist that, during their initial effort to obtain a urine specimen, he did not show signs of physical distress, nor were they aware of any significant health issue. Kimbrough, on the other hand, maintains that he told them he felt dizzy, "like he was going to pass out," and demanded to be taken to the infirmary. Another inmate corroborates that Kimbrough looked weak and told Lemens and Levesque that he felt faint and was unable to walk. According to Stutleen, Kimbrough did stop once and kneel down while under escort but otherwise walked under his own power and exhibited no sign of physical distress. Kimbrough and two other inmates counter that he wanted to stop and catch his breath but was forced along by Stutleen and Flannery.

Kimbrough's specimens were processed quickly, and the next day, September 21, the prison doctor ordered him hospitalized after reviewing the lab results. Hospital physicians diagnosed profound anemia likely caused by a Vitamin B-12 deficiency. Kimbrough was treated with a blood transfusion and Vitamin B-12- injections. After his release from the hospital, he experienced no more symptoms. His anemia, according to the undisputed opinion of the prison physician who treated him, was a cumulative condition that developed over a period of weeks or months and "did not deteriorate" between September 20 and 21. The doctor also confirms, in an affidavit submitted at summary judgment, that Kimbrough's anemia would not have been discovered and treated until the lab tests were completed. In that affidavit the doctor also rejects Kimbrough's unsupported assertion that an eye condition diagnosed the following month was linked to his anemia.

In this court Kimbrough presses his theory that these defendants did not do enough for him on September 20, but he never confronts the district court's conclusions that a jury could not reasonably find from the evidence at summary judgment that the named defendants ignored—or even knew about—his illness or that their conduct on September 20 caused him harm. Liability under the Eighth Amendment for the denial of medical care turns on proof that a defendant acted with deliberate indifference to a serious medical condition, *see Farmer v. Brennan*, 511 U.S. 825, 832-33, 835 (1994); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009), and that the inmate suffered harm as a result, *see Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir. 1996). "Deliberate indifference" is a subjective standard that equates with ignoring a known risk. *Farmer*, 511 U.S. at 835; *Johnson v. Snyder*, 444 F. 3d 579, 585 (7th Cir. 2006). Liability cannot be premised on negligence or even gross negligence; a defendant's conduct must have been "reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

There is no evidence in this record that the defendants knew or suspected that Kimbrough was anemic, nor is there any evidence that they hindered his treatment for that condition. Kimbrough essentially complains that, on his view of events, the defendants showed little compassion for his dizziness, fatigue, and shortness of breath on September 20 and pressed him for blood and urine specimens instead of taking him to the infirmary. But Kimbrough's "relatively minor" symptoms were not themselves objectively serious, *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 829 (7th Cir. 2009); *Henderson v, Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1372-73 (7th Cir. 1997), and nothing could be done to relieve his symptoms until the root cause—the anemia and underlying vitamin deficiency—was discovered. The lab results were key, and taking Kimbrough to the infirmary instead of obtaining and processing samples of his blood and urine might have made him momentarily more comfortable but ultimately would have *slowed* the discovery and treatment of his anemia. Kimbrough was being tended by Lemons, a *nurse*, and it was not his place to decide where or when the medical staff carried

out the doctor's order to obtain those specimens.  In any event, the defendants' actions on September 20 did not cause any actionable harm to Kimbrough.

AFFIRMED.