**John WALKER, Plaintiff,**

v.

**Dr. Ivy BENJAMIN, Dr. Adrian Feinerman, Dr. Ansar Ansari, Dr. Virgilio Pilapel, Pamela Dunbar, and Vickie Rowland, Defendants.**

No. 97–3036.

United States District Court, C.D. Illinois, Springfield Division.

June 8, 2000.

Western Illinois Correctional Center ("Western"). Plaintiff alleges that Defendants violated his constitutional rights and acted with deliberate indifference to his health, by failing to provide and delaying necessary medical care.

## I. PROCEDURAL BACKGROUND

On October 27, 1999, the Court allowed in part an denied in part Defendants' motion for summary judgment (d/e 54). The Court allowed the motion as to Defendants Rowland and Pilapel and denied the motion as to all other defendants. The Court did not specifically rule on the issue of qualified immunity which had been raised in Defendants' motion for summary judgment (d/e 34).[1] On April 20, 2000, Plaintiff filed a motion for directed finding on the issue of qualified immunity as to all other defendants (d/e 64). Defendants filed their response (d/e 80) and Plaintiff, as directed by the Court, filed his reply (d/e 87).

## II. QUALIFIED IMMUNITY STANDARD

Qualified immunity is a defense available to state and federal officials to ensure protection when they are required to exercise their discretion. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is an issue for the court, not for the jury. *Maltby v. Winston,* 36 F.3d 548 (7th Cir. 1994). Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages. *Id.* at 818, 102 S.Ct. 2727.

A public official is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727, *Chathas v. Smith,* 884 F.2d 980, 989 (7th Cir.1989). Unless it has been authoritatively decided

Barbara J. Clinite, Chicago, IL, for plaintiff.

Andrew M. Ramage, Illinois Attorney General's Office, Springfield, IL, for defendant.

### ORDER

CUDMORE, United States Magistrate Judge.

This cause is before the Court on Plaintiff's Motion for Directed Finding on the Issue of Qualified Immunity (d/e 64). Plaintiff, a state prisoner, brought a claim under 42 U.S.C. § 1983 against Defendants, several health care providers at the

---

1. If the Defendants, in October of 1999, had provided the detailed information "now" before the Court, this case would have been terminated at a much earlier date.

that certain conduct is forbidden, the public official is entitled to qualified immunity. *Rice v. Burks,* 999 F.2d 1172, 1174 (7th Cir.1993), *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 875 (7th Cir.1987). The plaintiff has the burden of establishing the existence of the alleged clearly established constitutional right by reference to closely analogous cases. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988).

■ A two-part test is used to analyze qualified immunity. *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986) (delineating a two-part analysis under *Harlow* ), *Triad Associates, Inc. v. Renault Robinson,* 10 F.3d 492 (7th Cir.1993). "(1) does the alleged conduct set out a constitutional violation? and (2) were the constitutional standards clearly established at the time in question?" *Id.* at 70.

### III. EIGHTH AMENDMENT STANDARD

■ Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishments when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ The standard articulated in *Estelle* contains both an objective and subjective element. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). First, a Plaintiff must show that his condition was sufficiently serious, an objective standard. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. A condition is serious if "the failure to treat a prisoner's condition could result in further significant injury or unnecessary and wanton infliction of pain." *Dunigan v. Winnebago County,* 165 F.3d 587, 590–91 (7th Cir.1999). Second, a plaintiff must show that an official acted with the requisite culpable state of mind, deliberate indifference, a subjective standard. *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. A state official is deliberately indifferent if he "knows of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970.

■ Delays in treating painful medical conditions support Eighth Amendment claims. "[A]n inmate must rely of prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle,* 429 U.S. at 103, 97 S.Ct. 285. In determining whether the denial or delay in treatment constitutes "deliberately indifferent," the Court may consider the "severity of the medical problem, the potential for harm if medical care is denied or delayed, and whether any harm actually resulted from the lack of medical attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1370 (7th Cir.1997), *see also, Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir.1996), *Antonelli v. Sheahan,* 81 F.3d 1422 (7th Cir.1996).

*Nurse Dunbar*

On motion for summary judgment this Court found that a reasonable trier of fact could conclude that Nurse Dunbar, based on Walker's complaints and her own observations on August 13, 1995, was aware that Walker's injury might result in further infection and pain and the injury was serious enough to need continued physician's care. The Court found that there was an issue of fact whether a reasonable nurse should have found Walker's condition on August 13, 1995 serious enough to merit contacting a physician for continued physician evaluation and treatment during the period of August 13, 1995 to August 25, 1995.

■ It appears, however, from documentary evidence that Walker was not attended to by Nurse Dunbar on August 13, 1995. The nurse's entry on August 13,

1995 is signed by a Nurse M. Reich. (Exhibit A–9). Nurse Dunbar's work record (Exhibit C) confirms that she was not even working on August 13, 1995.

Walker alleges in his reply memorandum that there is an issue of fact as to Nurse Dunbar's conduct on August 17, 1995. However, the Complaint contains no allegations against Nurse Dunbar with respect to her conduct on dates other than August 13, 1995. Plaintiff has not sought leave to amend his Complaint, and Defendant Dunbar would otherwise not be on notice as to her alleged conduct on dates other than August 13, 1995. Even if we consider that Plaintiff was in error as to the date, the allegations against Nurse Dunbar state that Dunbar "refused to take any action to have him seen by a physician or given oral or I.V. antibiotics." The Court finds that these allegations are simply not supported by the record. By August 17, 1995, Plaintiff had already been attended by Dr. Feinerman, Benjamin, Pilapel, and Ansari. All four doctors evaluation Walker's conditions and made treatment recommendations, including oral antibiotics. Additionally, by August 16, 1995, the appointment to see the orthopedic specialist Dr. Herrin was made. Plaintiff's allegations about Nurse Dunbar's conduct following his surgery were also not plead in the Complaint. Therefore, Nurse Dunbar was not on notice, through the Complaint, as to her alleged conduct on those dates following Walker's surgery, and the Court will not consider such allegations.

Accordingly, there is no evidence that Dunbar's conduct violated clearly established constitutional or statutory rights and she is entitled to qualified immunity. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

*Dr. Ansari*

On motion for summary judgment this Court noted that Dr. Ansari determined that Walker needed to see a specialist and directed that Walker see an orthopedic specialist. Dr. Ansari recommended a semi-emergent I & D (incision and drain-age) in a hospital setting. Dr. Ansari did not examine Walker again after August 10, 1995. The Court further noted that Walker was not seen by a specialist, and surgery was not performed until two weeks later. The Court held that the trier of fact could conclude that the delay in specialized treatment over the following two weeks, had Dr. Ansari been able to expedite such treatment, constituted deliberated indifference and unnecessary infliction of injury, pain and suffering.

It appears, however, from documentary evidence that Dr. Ansari could not have expedited hospital treatment.

Dr. Ansari, a general surgeon attended Plaintiff as a referral from Dr. Pilapel. Dr. Ansari first examined Plaintiff on August 10, 1995. The handwritten report is a consultation request and report to the Correctional Healthcare Solution (the medical provider for I.D.O.C. at the time). Dr. Ansari noted swelling to the right hand and a cut with no prominent abscess. He ordered an x-ray, CBC (complete blood count) and a culture. He also recommended an I & D (incision and drainage) of the abscess in the hospital (Exhibit D). Dr. Ansari's typewritten report recommends a CBC, culture if there is drainage, and an x-ray to make sure that osteomyelitis is not present. He writes that the patient required a semi-emergent I & D to be performed under suitable anesthesia, most likely in a hospital setting. He further notes that arrangements are being made to get these things accomplished. (Exhibit E).

Exhibit D further indicates that on August 16, 1995, Dr. Ansari was notified as to the results of the x-ray performed on August 11, 1995, which showed osteomyelitis. The report notes that Dr. Ansari instructed the Director or Nursing, Cindy Hobrock, that a consultation needed to be done by an orthopedic specialist. The report notes a recommendation to send Walker to an orthopedic specialist per order of Dr. Ansari. (Exhibit D)

Exhibit H shows that the appointment to see the orthopedic specialist Dr. Herrin and medical furlough request was made on August 16, 1995. Walker was scheduled for August 24, 1995 at 9:15 a.m. (Exhibit H)

■ Based on the complete record, there is no issue of fact as to "deliberate indifference." There is no specific evidence that Dr. Ansari knew and disregarded a risk to Plaintiff's health. In the instant case, Dr. Ansari correctly determined that Plaintiff had an abscess and recommended a semi-emergent I & D to be performed at a hospital. He ordered an x-ray, to determine osteomyelitis, and a CBC. After he received the results of the x-ray he instructed that the consultation needed to be done by the orthopedic specialist. The appointment was scheduled the same day. The affidavit from the hospital administrator shows that Dr. Ansari could not expedite the physical removal of the prisoner from the institution once a referral is made. (Exhibit F).

The Court finds that Dr. Ansari is entitled to qualified immunity. First, it does not appear that the alleged conduct of Dr. Ansari even rises to the level of a constitutional violation. Dr. Ansari examined Walker, made an initial diagnosis that an I & D would need to be performed probably in a hospital setting, ordered an x-ray and a CBC, was informed as to the results of the x-ray six days later, and instructed the administrator to set up the consultation with the orthopedic surgeon the same day.

However, even if there is an issue of fact to the delay between Dr. Ansari's examination and the surgery, the alleged violation is not so clearly established that Dr. Ansari would have understood, at the time of the incident, that his conduct violated the law. The Court is aware of no cases that would suggest a reasonable doctor would have known that he was to independently expedite the referral of a prisoner to a hospital specialist after he had already examined the prisoner and made such an appropriate referral pursuant to institutional protocol.

Accordingly, there is no evidence that Ansari's conduct violated clearly established constitutional or statutory rights and he is entitled to qualified immunity. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.

## Dr. Feinerman

On motion for summary judgment this Court found that Dr. Feinerman did not order I.V. antibiotics, did not refer Walker to a specialist, nor did she review the x-rays she ordered or the x-ray reports. The Court found that the delay in treatment created an issue of fact as to deliberate indifference. The Court found that there was an issue of fact that a reasonable physician should have found Walker's condition serious enough to merit a prompt evaluation by a specialist and treatment.

A more complete record shows that Dr. Feinerman prescribed Pen V.K. (penicillin-an antibiotic) beginning July 19, 1995 (Exhibit L). The medication administration form for July 19, 1995 (Exhibit M–1) shows that Walker failed to take 11 out of his 24 doses. The prescription order (Exhibit L) and the July 19, 1995 x-ray (Exhibit N) demonstrate that Dr. Feinerman ordered the x-ray of Walker's hand on July 19, 1995. The x-ray results show that the x-ray was negative for fracture and for osteomyeletis.

On August 10, 1995, Dr. Ansari hade made a recommendation that Plaintiff have an I & D performed at the hospital. (Exhibit D).

On August 11, 1995 Walker was prescribed Cipro (an oral antibiotic) by Dr. Feinerman. Dr. Feinerman determined that is was the correct antibiotic to prescribe based on the culture taken. (Exhibit P)

The record does not indicate that Dr. Feinerman was aware that Walker had osteomyelitis on August 11, 1995 as Plaintiff argued. The medical progress notes (Exhibit A–7) show that the x-ray was performed at 10:25 am by a radiologist

technician on August 11, 1995. The medical records (Exhibit A–8) indicate that Dr. Feinerman was called at 11:00 am, thirty-five minutes later. The x-ray was then sent outside the prison to be read by a radiologist. The x-ray report on August 11, 1995, shows that it was not received back in the institution from the outside radiologist until August 16, 1995, with the report prepared on August 15, 1995 (Exhibit J). This is consistent with when Dr. Ansari was notified of the results x-ray on August 16, 1995. (Exhibit D).

The only issue of fact in this case is whether a reasonable physician should have found Walker's condition serious enough to merit treatment and whether any delay in treatment constituted deliberate indifference.

Applying the two-part qualified immunity test. First, does the alleged violation set out a constitutional violation? Plaintiff has alleged that Dr. Feinerman's failure to treat Walker with I.V. antibiotics and refer him to a specialist caused his condition to result in further significant injury or unnecessary and wanton infliction of pain, in violation of the Eighth Amendment. The second step is whether the violations alleged were so clearly established that a reasonable official would have known at the time that his conduct violated the law?

There is no issue of fact as to referral to a specialist. Walker was recommended to have an I & D performed in a hospital setting by Dr. Ansari on August 10, 1995. On August 16, 1995, after he was notified of the x-ray results, Dr. Ansari instructed that the consultation with the orthopedic specialist Dr. Herrin be arranged. There is no clearly established law that would suggest Dr. Feinerman also had a duty to refer Walker to a specialist when another physician had already done so.

Walker cites predominantly to the case of *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir.1997). In *Gutierrez* the plaintiff allegedly received inadequate treatment for an infected cyst. However, Walker fails to observe that the Court of Appeals affirmed the district court's granting of judgment on the pleadings finding that despite isolated instances of delays in treatment, the prison physician was not deliberately indifferent in treating the cyst. *Id.* at 1375. In *Gutierrez* the Court noted the importance of "examin[ing] the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Id.* The Court of Appeals noted that although the doctor may have been incorrect initially in his assessment of the proper course of treatment for the infected cyst (prescribing only hot baths), the record reflected that the plaintiff sought and received some sort of treatment order for his cyst on approximately nine occasions (including pain medication, antibiotics, and sitz baths.) *Id.* The Court of Appeals clearly articulated that "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Id. citing Steele v. Choi,* 82 F.3d 175, 178 (7th Cir. 1996); *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) ("the Eighth Amendment is not a vehicle for bringing claims for medical malpractice").

In the instant case, Dr. Feinerman did prescribe a course of treatment both times she attended Plaintiff (July 19, 1995 and August 11, 1995, via telephone). On July 19, 1995 Dr. Feinerman prescribed penicillin, an antibiotic, and ordered an x-ray of Walker's hand. On August 11, 1995, an x-ray was performed by the radiologist technician and Dr. Feinerman was informed, via telephone that "x-ray shows displacement of base proximal phalanx at head fifth metacarpal" (Exhibit A–8). The x-ray was then sent out to a radiologist to be read, and the x-ray report was not received back from the radiologist on August 16, 1995. Dr. Feinerman then prescribed Cipro, an oral antibiotic. Examining the "totality" of Walker's medical care there is no evidence that Dr. Feinerman was deliberately indifference to his serious medical needs. *Gutierrez,* 111

F.3d at 1375. Dr. Feinerman prescribed a course of treatment on both occasion she attended Plaintiff. At most, as alleged by Plaintiff, Dr. Feinerman may have been negligent for failing to prescribe I.V. antibiotics if she was aware that Plaintiff had osteomyelitis. However, negligence alone is not actionable under the Eighth Amendment. *See Steele v. Choi*, 82 F.3d 175, 178 (7th Cir.1996); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996). Moreover, there does not appear to be clearly established law that the failure to prescribe I.V. antibiotics, when another course of medical treatment is prescribed, constitutes deliberate indifference to a serious medical need.

Walker cites to a handful of other cases. In *Thomas v. Pate*, 493 F.2d 151 (7th Cir.1974), plaintiff was injected with penicillin with the knowledge that plaintiff prisoner was allergic to it and the doctor refused to treat the allergic reaction. *Pate* 493 F.2d at 158. In *Wood v. Sunn*, 865 F.2d 982 (9th Cir.1988), the plaintiff developed a draining abscess in infection. There was no documentation that plaintiff received any medication. The doctor and nurse decided that plaintiff's pain was psychological and did not require medical attention. *Wood*, 865 F.2d at 984–988. In *Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980), the plaintiff suffered from a bleeding ulcer. He was discharged from the hospital with medical orders for a special diet and a prescription for the drug Tagamet to treat his ulcer. The plaintiff claimed he was not given his medication for almost a week after his return to the prison and denied the special diet prescribed to him. *Murrell*, 615 F.2d at 308. These cases are not analogous. In the present case, Walker was not treated with antibiotics that Dr. Feinerman knew were harmful, nor is there any evidence that the antibiotics prescribed by Dr. Feinerman caused any harm to Walker. Moreover, by contrast to the above cases, Dr. Feinerman did attend to Walker. Dr. Feinerman ordered an x-ray. Dr. Feinerman ordered two antibiotics (penicillin and cipro) which

she believed to be the appropriate course of medical treatment.

The other cases cited by Plaintiff are also not closely analogous. *Matzker v. Herr*, 748 F.2d 1142 (7th Cir.1984) (jailers failed to procure medical aid for his eye and teeth for pretrial detainee for three months); *Wright v. Stickler*, 523 F.Supp. 193 (N.D.Ill.1981) (plaintiff refused request for medical treatment despite severe abdominal pains), *Cummings v. Roberts*, 628 F.2d 1065 (8th Cir.1980) (prison officials failed to give medical care ordered by plaintiff's doctors), *Henderson v. Harris*, 672 F.Supp. 1054 (N.D.Ill.1987) (plaintiff denied access to a scheduled appointment with his doctor and was denied access to a return trip visit at the hospital). In the instant case, there is no evidence that Dr. Feinerman refused to attend to Walker. The evidence shows that Dr. Feinerman attended Walker on two occasions, ordered an x-ray and prescribed medication she felt was appropriate upon reviewing Walker's condition.

Applying the *Harlow v. Fitzgerald* test it does not appear that the alleged conduct of Dr. Feinerman even rises to the level of a constitutional violation. However, even if it does, the violations are not so clearly established that Dr. Feinerman would have understood at the time of the incident that her conduct violated the law. Plaintiff can provide no analogous cases that would suggest a reasonable doctor would have known that it was necessary to prescribe I.V. antibiotics when that doctor believed another course of treatment, which included antibiotics, was appropriate based on her examination of the patient.

Accordingly, there is no evidence that Feinerman's conduct violated clearly established constitutional or statutory rights and she is entitled to qualified immunity. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.

*Dr. Benjamin*

On motion for summary judgment this Court found that Dr. Benjamin did not order I.V. antibiotics nor did she refer

Walker to a specialist. The Court noted that Dr. Benjamin saw Walker on three separate occasions, July 23, July 29, and August 11, 1995, during which time the trier of fact could have concluded that the infection progressed in severity. The Court found that the delay in treatment created an issue of fact as to deliberate indifference. The Court found that there was an issue of fact that a reasonable physician should have appropriately treated the infection, and referred Walker to a specialist, without undue delay.

Dr. Benjamin first saw Plaintiff on July 23, 1995. At the time Dr. Benjamin saw Plaintiff he was on antibiotics (penicillin) which had been prescribed by Dr. Feinerman (Exhibits L, M–1). Dr. Benjamin also examined Plaintiff after the 7/19/95 x-rays ordered by Dr. Feinerman. The x-ray results (Exhibit N) were negative for fracture and showed no positive results for osteomyelitis. Dr. Benjamin prescribed an Ace wrap for one week, triple antibiotic ointment (TA0), Motrin for pain, continue the penicillin and scheduled Plaintiff for a reevaluation in one week. (Exhibit A–3)

Walker was next seen by Dr. Benjamin on July 29, 1995. On that date, Dr. Benjamin prescribed a stronger antibiotic (Keflex) to be taken twice a day for 10 days. (Exhibit A–5). Walker missed 9 of the 24 doses of Keflex he was to have taken between 7/29/95 and 8/8/95. (Exhibits M–1, M–2).

On 8/10/95 Dr. Ansari recommended that Walker have an I & D performed in a hospital setting. (Exhibit D).

Dr. Benjamin next saw Plaintiff on August 12, 1995. Dr. Benjamin noted that the 8/11/95 x-ray shows displacement of base of prox phalanx at fifth metacarpal. She then diagnosed an infection of the right hand, and ordered Cipro and dressing changes to be continued. (Exhibit A–8) Applying the two-part qualified immunity test. First, does the alleged violation set out a constitutional violation? Plaintiff has alleged that Dr. Benjamin's failure to treat Walker with I.V. antibiotics and refer him to a specialist caused his condition resulted in further significant injury or unnecessary and wanton infliction of pain, in violation of the Eighth Amendment. The second step is whether the violations alleged were so clearly established that a reasonable official would have known at the time that his conduct violated the law?

▮ Again, there is no issue of fact as to the referral to a specialist. Walker was recommended to have the I & D performed at the hospital on August 10, 1995. The is no clearly established law that would suggest Dr. Benjamin also had a duty to refer Walker to a specialist when another physician had already done so.

There is no analogous case law cited by Plaintiff that would have placed Dr. Benjamin on notice, at the time, that her conduct violated the Constitution. Dr. Benjamin attended to Plaintiff on three separate occasions. Following, the first consult Dr. Benjamin prescribed an Ace wrap for one week, triple antibiotic ointment (TA0), Motrin for pain, continue the penicillin and scheduled Plaintiff for a reevaluation in one week. At the time, the x-ray results were negative. On the second visit, Dr. Benjamin prescribed a stronger antibiotic (Keflex) to be taken twice a day for 10 days. On the third visit, Dr. Benjamin noted that the 8/11/95 x-ray showed displacement of base of prox phalanx at fifth metacarpal. She then diagnosed an infection of the right hand, and ordered Cipro and dressing changes to be continued. By this time, Plaintiff had been recommended for treatment at a hospital.

In the instant case, Dr. Benjamin did not fail to prescribe any medication to Walker (*e.g.Wood*), prescribe an antibiotic that was harmful (*e.g.Pate*), or ignore a medical order (*e.g.Murrell*). In the instant case, there is no evidence that Dr. Benjamin refused to attend to Walker. The evidence shows that Dr. Benjamin attended Walker on three occasions. On each occasion she prescribed an antibiotic, medication and/or dressing which she felt

was appropriate upon reviewing Walker's condition. Examining the "totality" of an Walker's medical care there is no evidence that Dr. Benjamin was deliberately indifference to his serious medical needs. *Gutierrez*, 111 F.3d at 1375. At most, as alleged by Plaintiff, Dr. Benjamin may have been negligent for failing to prescribe I.V. antibiotics if she was aware that Plaintiff had osteomyelitis. However, negligence alone is not actionable under the Eighth Amendment. *See Steele v. Choi*, 82 F.3d 175, 178 (7th Cir.1996); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996).

Plaintiff further cites to the cases of *Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir.1995) (correctional officers refused to give plaintiff his prescribed Tylenol tablet four times daily as prescribed by the examining physician), *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir.1996) (injured prisoners were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating), *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir.1999) (prison guard refused to give plaintiff medicine prescribed to alleviate pain caused by radiation treatment for Hodgkin's disease), for the proposition that the denial of pain medication is a basis for liability.

Plaintiff alleges in his reply memorandum that after Dr. Herrin or Dr. Graham had prescribed Darvocet for pain, Dr. Benjamin told Walker that he couldn't have it. From the Court's detailed review of the Complaint, the last allegations against Dr. Benjamin arise from her conduct on August 12, 1995. Plaintiff was not seen by Dr. Herrin, the orthopedic specialist until August 24, 1995. Therefore, if medication was indeed prescribed by Dr. Herrin, such pain medication was prescribed on August 24, 1995 or later. The Complaint does not put Dr. Benjamin on notice as to her conduct after August 12, 1995, and the Court will not consider such allegations. Further, there are no allegations in the Complaint that Dr. Benjamin failed to give Plaintiff pain medication on the three dates she attended him. Moreover, unlike the cases cited above by Plaintiff—where little or no treatment was provided, on each occasion Walker was seen by Dr. Benjamin she prescribed an antibiotic, medication and/or dressing which she felt was appropriate upon reviewing Walker's condition.

Applying the *Harlow v. Fitzgerald* test it does not appear that the alleged conduct of Dr. Benjamin even rises to the level of a constitutional violation. However, even if it does, the violations are not so clearly established that Dr. Benjamin would have understood at the time of the incident that her conduct violated the law. Plaintiff can provide no analogous cases that would suggest a reasonable doctor would have known that it was necessary to prescribe I.V. antibiotics when that doctor believed another course of treatment was appropriate based on her examination of the patient.

Accordingly, there is no evidence that Dr. Benjamin's conduct violated clearly established constitutional or statutory rights and she is entitled to qualified immunity. *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727.

*Therefore*, Plaintiff's Motion for Directed Finding on Issue of Qualified Immunity is DENIED (d/e 64). Defendants' request for judgment on the issue of qualified immunity is ALLOWED (see d/e 80). The Court finds that all remaining Defendants are entitled to qualified immunity. This case is hereby dismissed. All pending motions denied as moot.